2004 SD 120

**DAKOTA TRUCK UNDERWRITERS,**
Petitioners and Appellants,

and

Travelers Insurance Company,
Petitioners and
Appellants,

v.

**SOUTH DAKOTA SUBSEQUENT**
**INJURY FUND, Respondent**
and Appellee.

No. 22975.

Supreme Court of South Dakota.

Argued April 28, 2004.

Decided Oct. 27, 2004.

Mark F. Marshall of Davenport, Evans, Hurwitz & Smith, Sioux Falls, South Dakota, Attorneys for petitioners and appellant.

Sara B. Harens, Special Assistant Attorney General, S.D. Department of Revenue & Regulation, Division of Insurance, Pierre, South Dakota, Attorneys for respondent and appellee.

ANDERSON, LEE D., Circuit Judge.

[¶ 1.] Dakota Truck Underwriters and Travelers Insurance Co. (Insurers) appeal from a circuit court order which dismissed Insurers' claims for reimbursement from the South Dakota Subsequent Injury Fund (SIF) because Insurers failed to file their claims within the applicable statute of limitations period. The court held that the doctrines of equitable estoppel and equitable tolling did not apply. Due to the unique history and circumstances of these subsequent injury claims, we hold that the doctrine of equitable tolling applied to extend the claims filing period. Insurers' claims against SIF were timely filed. We affirm, in part, reverse, in part and remand for consideration of the merits of Insurers' claims.

## BACKGROUND

[¶ 2.] For many years prior to July 1, 1999, there was a South Dakota Subsequent Injury Fund. Employers/insurers that paid workers' compensation benefits to injured employees who had sustained prior injuries were entitled to file a claim for partial reimbursement against SIF. The fund was financed by employers paying an additional surcharge into the fund based upon their workers' compensation premiums.[1]

[¶ 3.] The statutes dealing with SIF and claims procedures were set forth in SDCL 62–4–34 *et seq.* The 1992 version of SDCL 62–4–34.1, which was in effect prior to July 1, 1999, provided in pertinent part:

Any claim against the subsequent injury fund shall be filed with the division of insurance within ninety days from the date of the final decision by the department [of Labor] that a compensable injury exists resulting in additional permanent partial or permanent total disability, or approval by the department of settlement between the parties. No claim may be filed prior to a decision or approval of settlement from the department.

[¶ 4.] The South Dakota Legislature repealed SDCL 62–4–34.1 in 1999. 1999 SD Sess.L. ch. 262 § 3. SDCL 62–4–34.7 was enacted to provide a process for resolving outstanding claims. 1999 SD Sess.L. ch. 262, § 1. It required such claims to be filed by June 30, 1999. SDCL 62–4–34.7 provided:

Administration of the subsequent injury fund by the Division of Insurance and reimbursement of complete and valid claims shall continue until approved, denied, or settled. Any claim for reimbursement from the subsequent injury fund shall be filed by June 30, 1999. Only those claims timely filed with the division by June 30, 1999, pursuant to the requirements of § 62–4–34.1 in effect prior to July 1, 1999, and completed by October 1, 1999, pursuant to the requirements set forth in § 62–4–34.4 in effect prior to July 1, 1999, shall be eligible for reimbursement from the subsequent injury fund. Any claim timely filed by June 30, 1999, and completed by October 1, 1999, as set forth in this section, shall be approved or denied by the division pursuant to the requirements of §§ 62–4–34 to 62–4–36.3, inclusive, in effect prior to July 1, 1999. The

---

1. This Court reviewed the fund and its purpose in *South Dakota SIF v. Homestake Mining,* 1999 SD 159, 603 N.W.2d 527 and *S.D.*

*S.I.F. v. Heritage Mut. Ins. Co.,* 2002 SD 34, 641 N.W.2d 656.

division shall continue to make any necessary assessments pursuant to the requirements set forth in § 62–4–35 in effect prior to July 1, 1999, until all eligible claims completed as set forth in this section that are approved by the division or determined by the court to be eligible for reimbursement are paid, and until all matters in litigation concerning the subsequent injury fund are resolved. Any claim in matters being litigated concerning the subsequent injury fund is not eligible for interest or costs. Any remaining balance in the fund after all obligations of the fund have been satisfied shall be deposited in the general fund. Priority of payment shall be determined as of the date and time they are determined by the division to be complete and valid. No claim against the subsequent injury fund is vested until it is complete as set forth in this section. Any completed claim regardless of the date of injury or the date of notice of claim is subject to the two-thirds method of reimbursement pursuant to § 62–4–34 in effect prior to July 1, 1999.

[¶ 5.] Insurers in this case had eight potential claims arising out of injuries that had occurred prior to July 1, 1999. However, these claims were neither decided nor were their settlements approved by Department until between November 1, 1999 and December 22, 2000. During this time period, Insurers were aware of the June 30, 1999 deadline for filing claims under SDCL 62–4–34.7. Therefore, Insurers believed it to be a useless act to file claims with SIF after June 30, 1999.

[¶ 6.] During 2000–2001 *Homestake Mining v. Subsequent Injury Fund*, 2002 SD 46, 644 N.W.2d 612 was making its way through the court system. The circuit court judge in that case ruled that the provisions of SDCL 62–4–34.7 and the for-mer 62–4–34.1 worked to unconstitutionally deny Homestake of its right to receive a reimbursement from the fund. *Id.* 2002 SD 46 at ¶ 6, 644 N.W.2d at 614. Nevertheless, the circuit court ruled the Homestake claims were untimely filed and granted summary judgment upholding the dismissal of the claims. The judgment was affirmed. *Id.*, 2002 SD 46 at ¶ 37, 644 N.W.2d at 622.

[¶ 7.] During the 2001 legislative session, while the Homestake claims were being litigated in the circuit court, House Bill 1208 was passed extending the deadline for filing a timely claim with SIF. 2001 SD Sess.L. ch. 293 § 1. This legislation amended SDCL 62–4–34.7 and allowed claims to be filed for subsequent injuries that occurred before July 1, 2001. It removed the language from § 62–4–34.7 which allowed "only those claims timely filed with the division by June 30, 1999 . . ." and stated in pertinent part:

> Administration of the subsequent injury fund by the Division of Insurance and reimbursement of complete and valid claims shall continue until approved, denied, or settled. No claim for reimbursement from the subsequent injury fund may be filed based on a subsequent injury that occurs on or after July 1, 2001. Any claim for reimbursement filed as set forth in this section shall be approved or denied by the division pursuant to the requirements of §§ 62–4–34 to 62–4–36.3, inclusive, in effect prior to July 1, 1999 . . .

[¶ 8.] This amendment appeared to eliminate the quagmire which existed for claims that were vested, but non-ripe June 30, 1999. The 2001 legislative change became effective July 1, 2001.

[¶ 9.] Insurers filed claims for reimbursement from SIF during September 2001, within ninety days of July 1, 2001.

## FACTS AND PROCEDURE

[¶ 10.] The facts and sequence of events concerning Insurers' claims are undisputed by either party. Insurers filed eight separate claims for reimbursement from SIF.[2]

[¶ 11.] This Court has consistently ruled that in workers' compensation cases the law in effect when the injury occurred governs the rights of the parties. *S.D. S.I.F.*, 2002 SD 34, at ¶ 3, 641 N.W.2d at 657. Accordingly, following the filing of the claims, Department ruled that the governing law in effect at the time of the subsequent injury controlled. Thus, Department ruled that Insurers were required to file their claims within ninety days of the approval of settlement or determination of the employee's workers' compensation claims by Department. De-

partment found that this did not occur and the claims were dismissed as being untimely.

[¶ 12.] Insurers appealed Department's dismissal of the eight claims to circuit court. Insurers questioned whether Department correctly concluded that Insurers' claims for reimbursement against SIF were untimely filed. Insurers argued that equitable estoppel, equitable tolling, or both, should apply to relieve them of the effects of the law and allow the presentation of Insurers' claims.

[¶ 13.] The circuit court held that the doctrine of equitable tolling did not apply to Insurers because the filing of their claims against SIF was not reasonable or in good faith. The court also held that the doctrine of equitable estoppel did not apply since there was neither false represen-

---

2. The eight individual claims are as follows:

1. *Dakota Truck Underwriters v. South Dakota Subsequent Injury Fund—HF No. 110, 2001/2002* (Scott Harlan—SIF 0798). The subsequent injury occurred on March 28, 1996 and Department approved settlement of appellant's claim on January 3, 2000. SIF received notice of the claim on September 6, 2001.

2. *Dakota Truck Underwriters v. South Dakota Subsequent Injury Fund—HF No. 139, 2001/2002* (Langley Hughes—SIF 0801). The injury occurred on March 27, 1998. Department approved settlement of appellant's claim on March 23, 2000. SIF received notice of the claim on September 6, 2001.

3. *Trail King West Plant v. South Dakota Subsequent Injury Fund—HF No. 118 2001/2002* (Roxanne Fitzler—SIF 0794). The injury occurred on January 15, 1998 and Department approved settlement of appellant's claim on January 26, 2000. SIF received notice of the claim on September 10, 2001.

4. *Trail King West Plant v. South Dakota Subsequent Injury Fund—HF No. 165, 2001/2002* (Gilchrist—SIF 0796). The injury occurred on September 1, 1994. The South Dakota Supreme Court determined a compensable injury existed on May 24,

2000. SIF received notice of the claim on September 21, 2001.

5. *Travelers Insurance Company v. South Dakota Subsequent Injury Fund—HF No. 145, 2001/2002* (Gary Duschscherer—SIF 0792). The injury occurred on August 10, 1998 and Department approved settlement of the appellant's claim on December 28, 2001.

6. *Trail King West Plant v. South Dakota Subsequent Injury Fund—HF No. 114, 2001/2002* (Buddy Pauley—SIF 0817). The injury occurred on June 22, 1999 and Department approved settlement of the appellant's claim on February 10, 2000. SIF received notice of the claim on September 28, 2001.

7. *Dakota Truck Underwriters v. South Dakota Subsequent Injury Fund—HF No. 109 2001/2002* (Gregory Knapp—SIF 0806). The injury occurred on September 19, 1996 and Department approved settlement of appellant's claim on February 7, 2000. SIF received notice of the claim on September 10, 2001.

8. *Dakota Truck Underwriters v. South Dakota Subsequent Injury Fund—HF No. 115 2001/2002* (Mary Jenkins—SIF 0803). The injury occurred on April 26, 1999 and Department approved settlement of appellant's claim on November 1, 1999. SIF received notice of the claim on September 28, 2001.

tation nor concealment of material facts. The circuit court held that Department properly dismissed Insurers' claims because they were untimely filed.

[¶ 14.] The issue on appeal is whether the doctrines of equitable tolling or equitable estoppel applied to extend the period within which Insurers could file their claims with SIF.

## STANDARD OF REVIEW

■ [¶ 15.] This case turns on the application of the statute of limitations and interpretation of the effect of a statutory amendment, both questions of law. "Questions of law are reviewed de novo with no deference given to the conclusions of law of the circuit court." *Homestake*, 2002 SD 46 at ¶ 12, 644 N.W.2d at 616. "Questions of law are subject to de novo review; no deference is given to an agency's conclusion of law." *Enger v. FMC*, 2000 SD 48, ¶ 7, 609 N.W.2d 132, 134. Further, this Court's review of the administrative agency's decision is unaided by any presumption that the circuit court's review of the agency's decision was correct. *Interstate Tel. Co-op., Inc. v. PUC*, 518 N.W.2d 749, 751 (S.D.1994).

■ [¶ 16.] This Court has not determined its standard of review for equitable tolling. We have, however, recognized that in reviewing the application of the doctrine of equitable estoppel, we are presented with a fully reviewable mixed question of law and fact. *See Crouse v. Crouse*, 1996 SD 95, ¶ 14, 552 N.W.2d 413, 417 (equitable estoppel is reviewed de novo). "Where relevant facts are undisputed and the district court denied equitable tolling as a matter of law, we review the district court's decision de novo." *Rouse v. Lee*, 339 F.3d 238, 247 (4th Cir.2003). We agree and hold that when the facts are undisputed, as they are here, we will apply a de novo standard of review to the applicability of equitable tolling.

## ANALYSIS AND DECISION

1. Purpose of a Statute of Limitations

■ [¶ 17.] SDCL 62–4–34.1 is a statute of limitations. *S.D. S.I.F.*, 2002 SD 34 at ¶ 3, 641 N.W.2d at 657. Traditionally, compliance with statutes of limitations is strictly required and doctrines of substantial compliance or equitable tolling are not invoked to alleviate a claimant from a loss of his right to proceed with a claim. *See Peterson v. Hohm*, 2000 SD 27, 607 N.W.2d 8. This principle finds justification in the rationale for creating statutes of limitations:

> "[t]he purpose of a statute of limitations is speedy and fair adjudication of the respective rights of the parties." *State of Minn. v. Doese*, 501 N.W.2d 366, 370 (S.D.1993). *See Jiricek v. Woonsocket Sch. Dist. No. 55–4*, 489 N.W.2d 348, 350 (S.D.1992); *Merkwan v. Leckey*, 376 N.W.2d 52, 53 (S.D.1985); *Burke v. Foss*, 334 N.W.2d 861, 864 (S.D.1983); *Chipperfield v. Woessner*, 84 S.D. 13, 14, 166 N.W.2d 727, 728 (1969). The trial court also noted that statutes of limitation have allowed people, through "legislative grace," to be "freed from the consequences of their actions after a statutory period of time resulting in peace of mind for the individual, less docket congestion, fewer administrative problems for the courts, and less work for law enforcement agencies. Stale claims are eliminated."

*Peterson*, 2000 SD 27, ¶ 14, 607 N.W.2d at 12.

[¶ 18.] In most cases, this important principle underlining the statute of limitations is appropriately advanced by refusing to judicially modify the harsh effect imposed by a statute of limitations. Never-

theless, courts have recognized an exception in some instances under the doctrines of equitable tolling and equitable estoppel.

### 2. Equitable Tolling

[¶ 19.] Equitable tolling is the doctrine under which a plaintiff may sue after the statutory time period has expired if he has been prevented from doing so due to inequitable circumstances. *See Bailey v. Glover*, 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636 (1874); *Shempert v. Harwick Chemical Corp.*, 151 F.3d 793, 797 (8th Cir.1998).

[¶ 20.] "As a general rule, equitable tolling is a remedy reserved for circumstances that are 'truly beyond the control of the plaintiff.'" *Hill v. John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir.1989); *see also Heideman v. PFL, Inc.*, 904 F.2d 1262, 1266 (8th Cir.1990); *Lown v. Brimeyer*, 956 F.2d 780, 782 (8th Cir.1992). The doctrine of equitable tolling should be applied where a party acts diligently, "only to find himself caught up in an arcane procedural snare." *Warren v. Department of Army*, 867 F.2d 1156, 1160 (8th Cir.1989).

[¶ 21.] In the majority of reported decisions courts have been reluctant to apply equitable principles to relieve a party of the effect of the statute of limitations. In *Klein v. Menke*, 83 S.D. 511, 517, 162 N.W.2d 219, 222 (1968), a workers' compensation case, we noted that "we are aligned with those courts where 'the making or filing of a claim within the required time is jurisdictional ... being an essential element of the right to compensation.' 100 CJS *Workmen's Compensation* § 468(2), pp. 363, 364. Where the making or filing of a timely claim is jurisdictional it cannot be waived or avoided on equitable grounds such as by a waiver or an estoppel."

[¶ 22.] In *Klein*, the claim was not filed until more than twenty two months after Klein had returned to his employment. The applicable statute required the claim to be filed within eighteen months. Klein argued that because he had been contacted by the insurer a number of times before the time for filing with the Industrial Commissioner had expired, the doctrine of equitable estoppel should apply. This Court disagreed, holding that the claimant had no justification for not making a timely claim; the facts did not support the finding of an estoppel.

[¶ 23.] In *Peterson*, 2000 SD 27, 607 N.W.2d 8, we acknowledged the doctrine of equitable tolling, but held it did not apply under the facts of the case. In *Peterson*, we quoted with approval the *North Dakota case Braaten v. Deere & Co.*, 569 N.W.2d 563, 566 (N.D.1997): "[i]mprudent legal practice is not reasonable conduct and would not invoke equitable tolling." Both *Peterson* and *Braaten* involved similar facts where the plaintiffs sought to bring suits in federal courts only to have them dismissed because diversity jurisdiction was lacking. Even though plaintiffs' counsel were aware that the cases might be subject to dismissal by the federal courts, they let the statutes of limitation run in the respective state courts before attempting to file their claims in the state forums.

[¶ 24.] For the doctrine of equitable tolling to apply, three things must be shown: "(a) a timely notice, (b) lack of prejudice to the defendant, and (c) reasonable and good-faith conduct on the part of the plaintiff." *Peterson*, 2000 SD 27 at ¶ 16, 607 N.W.2d at 13 (quoting *Braaten*, 569 N.W.2d at 566).

[¶ 25.] The circuit court below made no mention of the first two factors. It is not disputed, however, that Insurers timely filed their claims with SIF within ninety days of the legislature's curative legislation, which came into effect on July 1,

2001. In addition, there is no basis to conclude that SIF would be prejudiced. Insurers' claims fall well within the scope of why SIF was initially created. SIF was created to "encourage employers to hire or retain disabled or handicapped workers." *Sioux Falls Sch. Dist. v. South Dakota Subsequent Injury Fund*, 504 N.W.2d 107 (S.D.1993). Funding to cover the claims is readily available within SIF to pay the claims of Insurers and, if required, the legislature has provided for continuing assessments to cover such claims. SDCL 62–4–34.7.

[¶ 26.] The circuit court's reasoning for not applying the doctrine of equitable tolling was that Insurers did not satisfy the third factor: reasonable and good faith conduct. The circuit court noted that Insurers had not filed the claims within ninety days of the determination or the approval of the settlements by Department. Instead, Insurers waited to file their claims with SIF within ninety days following the effective date of the 2001 legislation. The circuit court ruled that Insurers conduct in filing their claims against SIF was not reasonable and in good faith, and that therefore equitable tolling was not applicable.

[¶ 27.] In considering whether Insurers acted reasonably and in good faith, Insurers were entitled to presume that the statute repealing the SIF in 1999 was constitutional and that the procedure barring vested but unripe claims was constitutional as well. *See Hancock v. Juvenile Services Center*, 2002 SD 69, ¶ 11, 647 N.W.2d 722, 724. Insurers should not have had to file their claims just in case the legislature later would repeal a previous law eliminating their right to file claims. *Lex non cogit ad inutilia:* the law does not require a useless act. *State ex rel. Strothers v. Murphy*, 132 Ohio App.3d 645, 725 N.E.2d 1185 (Ohio Ct.App.1999).

[¶ 28.] The conduct of Insurers in filing their claims is readily distinguishable from the conduct of the claimant/plaintiffs in *Klein, Peterson*, and *Braaten*. The circumstance which led to Insurers missing the filing deadline under the pre–1999 law was out of Insurers' hands. The July 1, 1999 cutoff for filing vested but unripe claims created a type of "arcane procedural snare" referred to in *Warren*, 867 F.2d at 1160.

[¶ 29.] The circuit court erred in holding that Insurers' conduct was not reasonable and not in good faith. The purpose of SIF is to reimburse worthy claims of employers who had employed persons with prior injuries. As a result of the curative legislation of 2001 extending the claims period, the legislature intended to reimburse vested claims. Any claims which would have been filed after the July 1, 1999 cutoff, and prior to July 1, 2001, would not have proceeded to payment prior to enactment of the 2001 amendment. Those claims would only be processed by SIF after July 1, 2001.

[¶ 30.] Further observation of the theory behind statutes of limitations is set forth in *Burnett v. New York Central Railroad Co.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965):

Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Order of Railroad Telegraphers v. Railway Express Agency*,

*Inc.,* 321 U.S. 342, 348–349, 64 S.Ct. 582, 586, 88 L.Ed. 788. Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights.

[¶ 31.] In the case at bar, however, we are not dealing with plaintiffs who have slept on their rights or with burdening defendants with surprise or stale claims. *Id.* The unique circumstances which were presented to Insurers after July 1, 1999 together with the reinstatement of subsequent injury fund filings by the 2001 legislation, require the application of the doctrine of equitable tolling to extend the filing period for Insurers' claims for ninety days beyond July 1, 2001.[3]

### 3. Equitable Estoppel

[¶ 32.] The doctrine of equitable estoppel has four elements:

In order to constitute an equitable estoppel ... representations or concealment of material facts must exist; the party to whom it was made must have been without knowledge of the real facts; the representations or concealment must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied thereon to his prejudice or injury.

*Cooper v. James,* 2001 SD 59, ¶ 16, 627 N.W.2d 784, 789. Estoppel cannot exist "if any of these essential elements are lacking, or if any of them have not been proved by clear and convincing evidence." *Id.* In application of this doctrine to public entities, equitable estoppel may only be used when an entity actively misled or deceived an individual with the intent to have the individual, or in this case, Insurers, alter their position to his detriment. *Erickson v. County of Brookings,* 1996 SD 1, ¶ 14–16, 541 N.W.2d 734, 737. There is no evidence of record to indicate any misconduct or misrepresentations by SIF. The circuit court did not err in ruling that equitable estoppel was not applicable.

### CONCLUSION

[¶ 33.] The doctrine of equitable tolling does apply to relieve Insurers of the effects of the statute of limitations under SDCL 62–4–34.1. Therefore Insurers' claims against SIF must be allowed to proceed as timely filed.

[¶ 34.] The order is affirmed, in part, reversed, in part, and remanded for consideration of the merits of Insurers' claims.

[¶ 35.] ANDERSON, Lee, Circuit Judge for SABERS, Justice, disqualified.

[¶ 36.] ZELL, Circuit Judge for ZINTER, Justice, disqualified.

[¶ 37.] KONENKAMP and MEIERHENRY, Justices, concur.

[¶ 38.] GILBERTSON, Chief Justice, and ZELL, Circuit Judge dissent.

---

**3.** In *Homestake,* 2002 SD 46 at ¶ 12, 644 N.W.2d at 616, this Court ruled that the ninety day statute of limitations for filing claims against SIF, which existed under the pre-July 1, 1999 law, still applied once the new statute was found unconstitutional. This Court also ruled that after the limitations period had expired and Homestake had done nothing to preserve its claims during that time, the July 1, 2001 amendment would do nothing to revive the claim.

On appeal Homestake argued, among other points, that doctrines of equitable tolling and substantial compliance should apply to relieve them of the effects of the limitations period. This Court thereafter affirmed the circuit court, but declined to discuss or rule on the equitable tolling and substantial compliance issues because they were not properly presented to the circuit court.

*Homestake* is distinguishable. The equitable tolling doctrine was not preserved for consideration on appeal. In addition, Homestake's claims were never filed with SIF after the underlying employees' worker compensation claims had been settled or decided by Department.

GILBERTSON, Chief Justice (dissenting).

[¶ 39.] I respectfully dissent. I would affirm the Department of Labor decision, as I agree that neither equitable tolling nor equitable estoppel allow the resurrection of Insurer's claims.

[¶ 40.] I agree with the Court that the issues in this case turn on the application of the statute of limitations and interpretation of the effect of a statutory amendment. *Homestake Mining Co. v. South Dakota Subsequent Injury Fund*, 2002 SD 46, ¶ 12, 644 N.W.2d 612, 616. As such, both applications are reviewed by this Court de novo giving no deference to the circuit court's conclusions of law. *Id.*

[¶ 41.] As this Court has often stated, "[t]he purpose of a statute of limitations is speedy and fair adjudication of the respective rights of the parties." *Peterson v. Hohm*, 2000 SD 27, ¶ 14, 607 N.W.2d 8, 12 (quoting *Minn. v. Doese*, 501 N.W.2d 366, 370 (S.D.1993)) (citing *Jiricek v. Woonsocket Sch. Dist. No. 55-4*, 489 N.W.2d 348, 350 (S.D.1992); *Merkwan v. Leckey*, 376 N.W.2d 52, 53 (S.D.1985); *Burke v. Foss*, 334 N.W.2d 861, 864 (S.D.1983); *Chipperfield v. Woessner*, 84 S.D. 13, 14, 166 N.W.2d 727, 728 (1969)). The statute of limitations in workers compensation cases is jurisdictional in nature, as making a timely claim is an essential element of the right to compensation. *Klein v. Menke*, 83 S.D. 511, 517, 162 N.W.2d 219, 222 (1968) (citation omitted).

[¶ 42.] It is a "well established principle that statutes of limitation applicable to suits [or claims] against the government are conditions attached to the sovereign's consent to be sued and must be strictly construed." *Kreiger v. United States*, 539 F.2d 317, 320 (3rd Cir.1976) (citing *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306, 311 (1957)) (holding statute of limitations should not be equitably tolled for taxpayer who filed a refund claim after the applicable statute of limitations). The United States Supreme Court has stated that the remedy of equitable tolling should be applied "sparingly" when the government is the defendant and extends no further than its use for claims between private litigants. *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 457, 112 L.Ed.2d 435, 444 (1990). Equitable tolling has been upheld by that Court in just two instances: when a defendant has filed a defective pleading within the statutory period, or where the plaintiff was induced or tricked by the defendant's conduct into allowing the statute of limitations to expire. *Irwin*, 498 U.S. at 96, 111 S.Ct. at 457-58. The doctrine has never been applied to a "garden variety claim of excusable neglect." *Id.*

[¶ 43.] Despite the favor with which statute of limitations defenses are met in the courts, an additional exception to their harsh outcome may be appropriate when a plaintiff acts "with 'utmost diligence,' only to find himself caught up in an arcane procedural snare." *Warren v. Department of Army*, 867 F.2d 1156, 1160 (8th Cir. 1989). In *Warren*, the pro se plaintiff filed his complaint within the time requirements of the applicable statute of limitations, but due to confusing language in the procedures provided to the plaintiff by the government, the plaintiff did not name the correct government official as the defendant. *Id.* at 1157-58. The case was dismissed by the lower court, but reversed by the Eighth Circuit using the doctrine of equitable tolling. *Id.* at 1160-61. That court was careful to note that *Warren* was not a case of imprudent legal practice, but rather confusion on the part of a pro se plaintiff created by the government itself. *Id.*

[¶ 44.] Imprudent legal practice is not reasonable conduct sufficient to invoke eq-

uitable tolling. *Peterson*, 2000 SD 27, ¶ 16, 607 N.W.2d at 13 (quoting *Braaten v. Deere & Company*, 569 N.W.2d 563, 564 (N.D.1997)). When the doctrine has been applied in favor of the plaintiff in South Dakota, the plaintiff has been victimized by active, fraudulent conduct on the part of the defendant. *See Smith v. Neville*, 539 N.W.2d 679, 682 (S.D.1995) (holding equitable tolling applied when state and state's insurance adjuster engaged in affirmative conduct that would have led a reasonable person to believe the state had received timely notice of the claim).

[¶ 45.] I agree with the U.S. Supreme Court that the doctrine should apply no further when the defendant is the government than when the defendant is a private litigant. Without active fraud or concealment on the part of the government, the doctrine of equitable tolling should not act to subvert the clear intent of the legislature when enacting a statute of limitations.

[¶ 46.] Insurers in the present case fall outside the two situations in which the U.S. Supreme Court has employed the doctrine of equitable tolling. Insurers did not timely file within the 90–day period as required by the pre–1999 version of SDCL 62–4–34.1. Nor did the government engage in any deceptive conduct to trick Insurers into missing the statute of limitations. Despite the absence of fraudulent or active conduct on the part of SIF, the Court focused on the diligence of the Insurers.

[¶ 47.] I fail to see how Insurers acted with the "utmost diligence" in the present case. In their brief, Insurers make much of the background of the two claims examiners involved in the eight claims at issue, and their reliance on copies of the South Dakota code provided by their employer, Risk Administration Services. (Appellant Br. at 14). One clerk was a high school graduate, and the other had an associate degree. *Id.* Insurers would have this Court believe that "utmost diligence" for Risk Administration and Insurers amounted to two hardworking employees, without legal training, determining how to interpret revisions to SDCL 62–4–34.7. For the term "utmost diligence" to have any meaning in this context, Insurers must have at the very least had legal counsel attempt to discern the correct course of action with regard to the SIF claims. This, Insurers failed to do and now wish to assert that they acted with "utmost diligence" in attempting to process their SIF claims.

[¶ 48.] Insurers' conduct at best approaches the level of "garden variety excusable neglect" held insufficient to invoke equitable tolling in *Irwin*, and at worst a complete failure to obtain legal advice on how to process SIF claims given the changes in the statutory scheme. More importantly, there was no active conduct on the part of the government to induce Insurers into missing the 90–day filing deadline, an essential element necessary to invoke equitable tolling.

[¶ 49.] I agree that there was no way for Insurers to know how our decision in *Homestake Mining Co. v. South Dakota Subsequent Injury Fund*, 2002 SD 46, 644 N.W.2d 612, would re-open the door for SIF claims. But in *Homestake*, the plaintiffs were without remedy for failure to adhere to the statute of limitations contained in SDCL 62–4–34.1.[4] We cannot now judicially legislate a remedy for Insurers given their failure to adequately investigate and comply with the same provisions in SDCL 62–4–34.1 that cost Homestake its opportunity to recover from the SIF.

---

**4.** In *Homestake Mining Co. v. South Dakota Subsequent Injury Fund*, this Court held that statute of limitations for SIF claims in effect at the time of the injury, not at the time the claim arose, applied. 2002 SD 46, 644 N.W.2d 612.

[¶ 50.] While the outcome may seem harsh to Dakota Truck Underwriters, the Department correctly applied the provisions of SDCL 62–4–34.1 to Insurers' claims. For the above reasons I would affirm the trial court[5] and therefore respectfully dissent.

[¶ 51.] ZELL, Circuit Judge, joins this dissent.

---

5. I agree with the Court that the equitable estoppel issue is without merit.