# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1893

_____

Gerald P. Pecoraro,  *

        *

        Appellant,  *

        *   Appeal from the United States

    v.           *   District Court for the

        *   District of South Dakota.

The Diocese of Rapid City,  *

a South Dakota nonprofit corporation,  *

        *

        Appellee.   *

_____

Submitted: November 18, 2005
Filed:  January 24, 2006

_____

Before ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Gerald P. Pecoraro (Pecoraro) appeals the district court's[1] entry of summary judgment in favor of the Diocese of Rapid City (Diocese), arguing the district court erred in concluding his claim was barred by the applicable statute of limitations. Finding no error, we affirm the judgment of the district court.

---

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

## I. BACKGROUND

In 1965, Pecoraro, then a fourteen-year-old resident of Omaha, Nebraska, was placed by his parents in the custody of Sky Ranch for Boys, Inc. (Sky Ranch), located in South Dakota. At that time, Father Donald Murray (Father Murray) served as executive director of Sky Ranch. The Diocese appointed Father Murray as the Sky Ranch director, and allegedly directed and controlled Father Murray's actions as director.

Pecoraro alleges Father Murray sexually assaulted him on three occasions during 1965 and 1966 while Pecoraro resided at Sky Ranch: twice in South Dakota at Sky Ranch, and once while taking Pecoraro to Chicago, Illinois. After the third alleged incident of sexual abuse, Pecoraro and two other minor residents of Sky Ranch informed a Sky Ranch counselor of Father Murray's actions. The counselor then reported the matter to the Bishop of the Diocese. After some investigation by the Diocese, Sky Ranch closed, and Pecoraro returned to his home in Omaha.

In early 1967, Pecoraro was arrested by Omaha police for joyriding and was sent to the Nebraska State Training School (NSTS) in Kearney, Nebraska. Pecoraro remained there until June 1967, when, just before Pecoraro's scheduled release, Father Murray contacted NSTS, informed NSTS officials Sky Ranch had re-opened, and requested custody of Pecoraro. Father Murray flew the Sky Ranch airplane to Kearney, obtained custody of Pecoraro, flew with Pecoraro to an Omaha fund-raiser, and then took Pecoraro to a ranch in Wyoming and later to a private home in South Dakota. Months later, when Father Murray strongly encouraged Pecoraro to enlist in the United States Marine Corps, Pecoraro refused and fled South Dakota.

Pecoraro eventually returned to Omaha. Over the next thirty years, he abused drugs and alcohol, attempted suicide, and developed psychological and personality disorders. In approximately January 2001, following the public revelation of the

Catholic Church sexual abuse scandals, Pecoraro concluded Father Murray's sexual assaults caused Pecoraro's mental illness and psychological disorders.

In February 2002, Pecoraro brought suit in the United States District Court for the District of Nebraska against the Diocese, Sky Ranch, and the Sky Ranch Foundation, Inc. (Foundation), alleging the defendants were vicariously liable for the sexual abuse inflicted on Pecoraro by the then deceased Father Murray. In September 2002, the district court dismissed Pecoraro's complaint for lack of personal jurisdiction over the defendants and for improper venue. On August 18, 2003, this court affirmed the dismissal of the Diocese, but held the district court had personal jurisdiction over Sky Ranch and the Foundation and venue was proper in the District of Nebraska. Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 563 (8th Cir. 2003) (Pecoraro I). The case was remanded, and in September 2004, following the parties' settlement agreement, Pecoraro, Sky Ranch, and the Foundation filed a stipulated motion to dismiss the action with prejudice. The district court granted the motion.

On November 17, 2004, Pecoraro filed a suit in the United States District Court for the District of South Dakota against the Diocese, again alleging the Diocese's vicarious liability for the sexual abuse inflicted by Father Murray. The Diocese moved for summary judgment, arguing Pecocaro's action was barred by the three-year statute of limitations set forth in South Dakota Codified Law (SDCL) § 26-10-25. The district court granted summary judgment in favor of the Diocese, holding: (1) the three-year limitations period set forth in section 26-10-25, rather than the six-year limitations period set forth in SDCL § 22-22-24.13, applied to Pecoraro's cause of action; (2) the limitations period was not equitably tolled during the pendency of Pecoraro's previous suit against the Diocese; and (3) the limitations period was not tolled pursuant to SDCL § 15-2-22 because Pecoraro was not mentally ill.

Pecoraro appeals, arguing the district court erred in granting summary judgment in favor of the Diocese because (1) the six-year statute of limitations set forth at

section 22-22-24.13 governs Pecoraro's cause of action, (2) the three-year limitations period was equitably tolled and did not expire before the filing in South Dakota, and (3) Pecoraro's mental illness tolled the limitations period.

## II.     DISCUSSION

### A.     Standard of Review

Our standard of review is a familiar one.  We review de novo a grant of summary judgment, applying the same standards as the district court.  Woodland v. Joseph T. Ryerson & Son, Inc., 302 F.3d 839, 841-42 (8th Cir. 2002).  Summary judgment for the Diocese is proper if the evidence, viewed in the light most favorable to Pecoraro and giving Pecoraro the benefit of all reasonable inferences, shows there are no genuine issues of material fact and the Diocese is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see, e.g., Mayer v. Nextel W. Corp., 318 F.3d 803, 806 (8th Cir. 2003).

### B.     The Governing Statute of Limitations

South Dakota substantive law, including its statute of limitations, governs this diversity action.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Larsen v. Mayo Med. Ctr., 218 F.3d 863, 866 (8th Cir. 2000).  The construction and application of a statute of limitations present questions of law, subject to de novo review.  Stratmeyer v. Stratmeyer, 567 N.W.2d 220, 222 (S.D. 1997) (citations omitted).

Pecoraro contends the district court erred in applying the three-year statute of limitations set forth in SDCL § 26-10-25, entitled "Time limit on civil action arising out of sexual abuse of child," which provides:

> Any civil action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within . . . *three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by the act.*

Id. (emphasis added). Pecoraro argues his cause of action is governed by the six-year statute of limitations set forth at SDCL § 22-22-24.13, entitled "Statute of limitations" for sex offenses, which provides, "Any action for damages under § . . . 22-22-30 . . . shall be commenced *within six years of the time the plaintiff knew, or had reason to know*, of any injury caused by violations of [§ 22-22-30]." Id. (emphasis added). Section 22-22-30 defines "sex crimes" for purposes of sections 22-22-31 through 22-22-39, and includes, among other crimes, rape, sexual contact with a child under sixteen, sexual contact with a person incapable of consenting, kidnapping a minor, indecent exposure, and solicitation of a minor.

Citing Peterson v. Burns, 635 N.W.2d 556, 568 (S.D. 2001), Pecoraro claims under South Dakota law, if two statutes of limitations conflict with each other, the statute providing the longer limitations period applies. With little explanation, Pecoraro then argues the six-year limitations period in section 22-22-24.13 applies to any injury caused by violations of all sex crimes defined in section 22-22-30. Thus, according to Pecoraro, the jury should determine whether Father Murray committed any of the section 22-22-30 sex crimes, and whether Pecoraro's claim therefore is timely under the six-year limitations period.

Such an interpretation is unsupported by the law. Pecoraro's reliance on Peterson is misplaced. After the Peterson court noted the general rule regarding conflicting statutes of limitations, the court recognized the "rule does not apply when the two statutes can be harmonized." Peterson, 635 N.W.2d at 568. Because the three-year limitations period in section 26-10-25 and the six-year limitations period in section 22-22-24.13 apply to different types of claims, "the two statutes can be harmonized." See id. On its face, section 22-22-24.13 provides the limitations period for certain offenses, including an action for damages for violations of section 22-22-30. However, section 22-22-30 specifically indicates it is defining "sex crimes" for purposes of sections 22-22-31 through 22-22-39, which address the requirements pertaining to the registration of convicted sex offenders. See Meinders v. Weber, 604

N.W.2d 248, 254 (S.D. 2000) (referring to sections 22-22-30 to 22-22-40 as "South Dakota's sex offender registration laws"). "The registration requirement is triggered by a conviction for one of the enumerated sex crimes in SDCL 22-22-30. [Thus,] [a]ny punishment flowing from the sex offender registration statutes comes from a failure to register, *not from the past sex offense*." Id. at 259 (citing State v. Cook, 700 N.E.2d 570, 584 (Ohio 1998)) (emphasis added). Pecoraro did not allege Father Murray was a convicted sex offender who failed to register. Contrary to Pecoraro's assertions, the six-year limitations period in section 22-22-24.13 does not apply to his cause of action.

Our conclusion that the applicable statute of limitations is the three-year limitations period in section 26-10-25 comports with decisions interpreting and applying South Dakota law. See Stratmeyer, 567 N.W.2d at 223 ("It is obvious from a plain reading of SDCL 26-10-25 and 26-10-29 that the Legislature intended SDCL 26-10-25 to apply to all acts of intentional childhood sexual abuse conduct."); see also Pecoraro I, 340 F.3d at 561 n.1 (stating the applicable statute of limitations for a victim alleging childhood sexual abuse is the three-year limitations period found in section 26-10-25); Delonga v. Diocese of Sioux Falls, 329 F. Supp. 2d 1092, 1104 (D.S.D. 2004) (applying section 26-10-25 to victim's allegation she suffered childhood sexual abuse by a priest). In Pecoraro's earlier Nebraska case (Pecoraro I), Pecoraro expressly alleged discovery "on or about January, 2001," and "[b]ecause [Pecoraro] was a minor at the time of these abuses, the applicable statute of limitations of South Dakota, SDCL 26-10-25, allows [Pecoraro] three years from the time of discovery in which to file this suit." Thus, we agree with the district court, and Pecoraro's earlier position, that section 26-10-25 is the applicable statute of limitations.

**C.    Whether the Three-Year Limitations Period was Equitably Tolled During Pecoraro I**

Pecoraro next contends the district court erred in holding the three-year statute of limitations was not equitably tolled while Pecoraro I was pending in the District of Nebraska and on appeal to this court.  In January 2001, Pecoraro "discovered" the childhood sexual abuse perpetrated by Father Murray "was the cause of [Pecoraro's] serious psychological injuries."  Applying section 26-10-25, the three-year statute of limitations would expire in January 2004.  Pecoraro I was commenced against the Diocese by service of a summons in February 2002.  See SDCL § 15-2-30; Marshall v. Warwick, 155 F.3d 1027, 1033 (8th Cir. 1998) (stating that under section 15-2-30, service of the summons is required to commence a lawsuit and toll the applicable statute of limitations).  Following the district court's dismissal of Pecoraro's cause of action for lack of personal jurisdiction and improper venue, this court affirmed the dismissal with regard to the Diocese in August 2003.  Pecoraro I, 340 F.3d at 563.  Pecoraro failed to file a new case in South Dakota during the remaining four months still to run on the three-year statute of limitations.  Pecoraro did not commence the present action until November 2004, three years and ten months after Pecoraro discovered the purported cause of his psychological injuries and condition.  Therefore, Pecoraro's present suit against the Diocese is untimely, unless we conclude the three-year limitations period was equitably tolled during the pendency of Pecoraro I.

"The purpose of a statute of limitations is speedy and fair adjudication of the respective rights of the parties."  Minnesota v. Doese, 501 N.W.2d 366, 370 (S.D. 1993) (citations omitted).  The doctrine of equitable tolling permits a plaintiff to "sue after the statutory time period has expired if he has been prevented from doing so due to inequitable circumstances."  Dakota Truck Underwriters v. S.D. Subsequent Injury Fund, 689 N.W.2d 196, 202 (S.D. 2004).  Courts generally require strict compliance with a statute of limitations and rarely invoke doctrines such as equitable tolling to alleviate a plaintiff from a loss of his right to assert a claim.  See id. at 201.  Thus, the remedy of equitable tolling traditionally is reserved for circumstances "truly beyond the control of the plaintiff," Hill v. John Chezik Imports, 869 F.2d 1122, 1124 (8th

Cir. 1989), and "should be applied where a party acts diligently, 'only to find himself caught up in an arcane procedural snare,'" Dakota Truck Underwriters, 689 N.W.2d at 202 (quoting Warren v. Dep't of Army, 867 F.2d 1156, 1160 (8th Cir. 1989)). To equitably toll a statute of limitations, the plaintiff must demonstrate (1) timely notice, (2) lack of prejudice to the defendant, and (3) reasonable, good-faith conduct by the plaintiff. Id. (quotation omitted).

The circumstances of this case do not justify the application of equitable tolling. We are unconvinced that Pecoraro acted diligently, id., or that "circumstances truly beyond [Pecoraro's] control" affected his ability to comply with the statute of limitations. See Hill, 869 F.2d at 1124. Although Pecoraro's initial act of suing the Diocese in the District of Nebraska may have been reasonable and in good faith based on his belief the Diocese was subject to personal jurisdiction in Nebraska, Pecoraro's subsequent failure to take heed of numerous warnings regarding personal jurisdiction was unreasonable. See Peterson v. Hohm, 607 N.W.2d 8, 13 (S.D. 2000) ("Persisting in a jurisdictional posture while waiting for a federal court to make an inevitable ruling is unreasonable when the limitations statute is poised to terminate the lawsuit." (quoting Braaten v. Deere & Co., 569 N.W.2d 563, 566 (N.D. 1997))). In Pecoraro I, in answering whether Pecoraro "made any showing of minimum contacts between the Diocese and the State of Nebraska," we concluded "the answer is clearly 'no.'" Pecoraro I, 340 F.3d at 562-63. As the district court noted, it should have been clear to Pecoraro the Diocese did not have sufficient minimum contacts with Nebraska to constitute personal jurisdiction "if not when the Diocese moved to dismiss on that ground, at least when [this circuit] ultimately dismissed the Diocese on August 18, 2003." Following the dismissal of Pecoraro's claim against the Diocese, Pecoraro sat on his hands for over one year rather than attempting to protect his lawsuit by immediately filing a claim in South Dakota. Notions of reasonableness, in light of repeated warnings concerning the lack of personal jurisdiction over the Diocese, dictated Pecoraro timely file his claim in another federal district. See Peterson, 607 N.W.2d at 13 (citations omitted).

This is not a case where Pecoraro acted with the "'utmost diligence,' only to find himself caught up in an arcane procedural snare."  Warren, 867 F.2d at 1160 (quotation omitted); see Dakota Truck Underwriters, 689 N.W.2d at 202.  While we recognize the public policy of vindicating the rights of childhood sexual abuse victims, we also recognize the important rationale concerning the speedy and fair adjudication of the rights of parties and conclude the circumstances of this case do not warrant equitable tolling.  Therefore, we agree with the district court and hold the three-year statute of limitations was not equitably tolled while Pecoraro I was pending in the District of Nebraska and on appeal to this circuit.

**D.   Whether the Three-Year Limitations Period was Tolled for Mental Illness**

Finally, Pecoraro argues the three-year statute of limitations was tolled pursuant to SDCL § 15-2-22 during the time he was mentally ill.  Section 15-2-22 provides, in part:

> If a person entitled to bring an action . . . was *at the time the cause of action accrued* . . . [m]entally ill[,] the time of the person's disability is not a part of the time limited for the commencement of the action.
>
> The period within which the action shall be brought cannot be extended . . . in any case longer than one year after the disability ceases.

Id. (emphasis added).  In approximately January 2001, Pecoraro determined the childhood sexual abuse he endured from Father Murray caused Pecoraro's mental illness and psychological injuries.  At this time, Pecoraro's cause of action accrued, and the statute of limitations began running.  Without any tolling of the three-year limitations period, Pecoraro's claim would expire in January 2004.  Therefore, we must determine whether Pecoraro was mentally ill at the time his cause of action accrued in January 2001, thus tolling the statute of limitations.

Section 15-2-22 does not define the term "mentally ill," and no court has set forth a precise definition of the term. However, in determining whether a plaintiff was mentally ill within the meaning of section 15-2-22, the South Dakota Supreme Court has considered whether the individual (1) was a danger to himself or others, (2) had the capacity to make responsible decisions for himself and conduct his ordinary affairs, (3) could comprehend his legal rights and liabilities, and (4) was able to manage his own business affairs and property. Merkwan v. Leckey, 376 N.W.2d 52, 53 (S.D. 1985). Similarly, the South Dakota Supreme Court has defined the related term "mental incapacity" under SDCL § 3-21-4 as "the failure to understand the nature and effect of one's actions," and has stated that in determining whether such a failure exists, courts "should examine all relevant facts and circumstances of a person's overall ability to function in society and comprehend and protect his or her legal rights." In re Kindle, 509 N.W.2d 278, 283 (S.D. 1993) (citations omitted).

Pecoraro contends he is entitled to the benefit of section 15-2-22 because he was mentally ill from early 2003 until November 2004. During that time, Pecoraro attempted suicide, was agoraphobic, ignored basic financial affairs, lost his house and later an apartment, could not be around others, could not talk on the phone, and was hospitalized in several institutions. Such conditions and incidents, Pecoraro argues, raise material issues of fact concerning whether he was mentally ill within the meaning of section 15-2-22. We disagree. In determining whether the three-year limitations period was tolled by mental illness, it is irrelevant whether Pecoraro was mentally disabled from early 2003 until November 2004. Such an argument ignores the plain language of section 15-2-22, which states the claim's *accrual date* is the relevant time for determining whether one is mentally ill. Because Pecoraro's cause of action accrued in January 2001, we examine Pecoraro's mental condition at that point in time.

We find no evidence, and no allegation, Pecoraro was mentally ill at the time his cause of action accrued. To the contrary, Pecoraro's actions demonstrate his

-10-

comprehension of and his ability to protect his legal rights. See, e.g., In re Kindle, 509 N.W.2d at 283; Merkwan, 376 N.W.2d at 53. Before filing suit in Nebraska in February 2002, Pecoraro actively assisted his attorney's investigation by directing his attorney to contact Sky Ranch and request copies of Pecoraro's records. Additionally, Pecoraro's own admission indicates his reasoned decision to file suit initially in Nebraska rather than South Dakota. In April 2002, Pecoraro stated in an affidavit his belief he could not "get a fair trial . . . in South Dakota, where the public perception of the Sky Ranch boys and former Sky Ranch boys is that they are criminals." We agree with the Diocese and the district court that Pecoraro chose to file in Nebraska "because he believed he would get a more favorable jury pool," and "not because he was mentally ill." Because Pecoraro was not mentally ill at the time his cause of action accrued, the three-year limitations period was not tolled pursuant to section 15-2-22.

## III.    CONCLUSION

The circumstances alleged in Pecoraro's cause of action are egregious, but the Diocese's "defense predicated upon the statute of limitations is meritorious and is not to be disregarded with disfavor by this court." Shippen v. Parrott, 506 N.W.2d 82, 86 (S.D. 1993) (quotation omitted). Pecoraro's claim against the Diocese is untimely, and the facts of this case, no matter how vile, do not permit tolling of the three-year statute of limitations. Accordingly, we affirm the district court's grant of summary judgment in the Diocese's favor.

_____