# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-1690

———————

Pamela Baye; Sylvan Baye,      *

                              *

         Plaintiffs - Appellants,      *

                              *     Appeal from the United States

      v.                             *     District Court for the

                              *     District of South Dakota.

Diocese of Rapid City, a South Dakota      *

not for profit corporation,      *

                              *

         Defendant - Appellee.      *

———————

Submitted:  December 14, 2010
Filed:  January 25, 2011

———————

Before WOLLMAN, MURPHY, and COLLOTON, Circuit Judges.

———————

MURPHY, Circuit Judge.

Pamela Baye alleges she was raped in 1987 by her parish priest, that her memory of the assault was repressed, and that she did not recover it until 2006. She and her husband Sylvan Baye then brought this action in 2007 against the Catholic Diocese of Rapid City. The district court[1] granted summary judgment in favor of the diocese, holding the Bayes' claims barred by the statute of limitations. The Bayes timely appealed. We affirm.

_____

[1]The Honorable Karen E. Schreier, Chief Judge, United States District Court for the District of South Dakota.

I.

The facts are viewed in the light most favorable to the Bayes since they opposed summary judgment. See Pecoraro v. Diocese of Rapid City, 435 F.3d 870, 873 (8th Cir. 2006). Because Sylvan Baye's claim is derivative of his wife's, see Selchert v. Lien, 371 N.W.2d 791, 794 (S.D. 1985), we refer in the following discussion only to Pamela Baye.

Starting when Pamela Baye was three and continuing throughout her childhood, Baye's father sexually abused her. Other men and Baye's mother participated in the abuse. Baye was diagnosed as an adult to have dissociative identity disorder (DID) (developed in early childhood), as well as post traumatic stress disorder, depression, insomnia, panic disorder, anxiety disorder, and suicidal ideation. According to Baye, she has had as many as forty different personalities. She has sometimes suffered loss of time and memory when one of the alternate personalities would appear during a traumatic event. Baye remains in therapy and cannot work.

In 1987 at age twenty three, Baye consulted with Father Christopher Scadron, a sixty seven year old parish priest at Sacred Heart Church in the Diocese of Rapid City, South Dakota. Baye sought his help in coping with her abusive upbringing. During one of their meetings, Scadron raped Baye while they were kneeling at the church altar. During and immediately after the assault, Scadron told Baye that if she told anyone about it her children would die and go to hell. Baye immediately repressed her memory of the assault and rediscovered it only in 2006 when one of Baye's alternate personalities revealed it to a friend. The friend then told Baye's therapist who informed Baye.

Father Scadron had joined the diocese in 1983. Years earlier when Scadron was a Franciscan novice, his supervisors found him disobedient, immature, and lacking in judgment. The Franciscans ultimately released him from their order. As Sacred

Heart's pastor from 1984 to 1990, Scadron received criticism for his preaching, for misstating canon law, and for distancing himself from his colleagues. His employee records contain no allegations of abuse, although they contain a parishioner letter withdrawing unidentified charges against Scadron.

Father Scadron died in 2002, four years before Baye recovered her memory of his assault. In 2007 the Bayes brought this action against the diocese. Pamela Baye alleged assault and battery, sexual abuse, and intentional infliction of emotional distress under a vicarious liability theory. She also sued the diocese directly for breach of fiduciary duty, fiduciary fraud, and negligent hiring, supervision, and retention. Sylvan Baye sued for loss of consortium.

The district court granted the diocese's motion for summary judgment, holding the Bayes' claims barred by the statutes of limitations. They now appeal.

II.

Baye did not bring this action until nineteen years after she was assaulted, but she argues on several grounds that it is not time barred. We review the district court's grant of summary judgment de novo, affirming if the record shows that there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law. Pecoraro, 435 F.3d at 872–73. South Dakota law applies in this diversity action. Id. at 873.

The South Dakota legislature has established a limitations period of two years for Baye's assault and battery claim and three years for her other claims. S.D.C.L. §§ 15-2-15(1), 15-2-14(3). The legislature has provided an extension of the limitations periods, however, for plaintiffs who were mentally ill when their causes of action accrued. Such plaintiffs have five additional years beyond the regularly applicable

statutory period to bring their lawsuits. Id. § 15-2-22(2); Jensen v. Kasik, 758 N.W.2d 87, 89 (S.D. 2008).

## A.

Baye first argues that her claims against the diocese did not accrue until she became aware of Scadron's assault upon recovering her memory in 2006. In essence her position is that the statute of limitations does not begin to run until a claimant receives actual or constructive notice of her right to sue. Although she resists the label, her position is equivalent to the so called "discovery rule," under which a statute of limitations runs from the time a plaintiff discovers facts sufficient to form a cause of action. Shippen v. Parrott, 506 N.W.2d 82, 85 (S.D. 1993), overruled on other grounds by Jensen, 758 N.W.2d at 89.

South Dakota law is clear that no discovery rule applies to delay the running of a statute of limitations unless there has been explicit statutory authorization to that effect. Id. (reversing trial court's application of discovery rule to sexual abuse victim); Alberts v. Giebink, 299 N.W.2d 454, 455 (S.D. 1980). The statutes under which Baye sued do not provide such explicit language. Instead, the legislature has provided that causes of action under those statutes accrue on occurrence of the tortious conduct. S.D.C.L. §§ 15-2-15(1), 15-2-14(3) (containing no explicit discovery rule); see also Jacobson v. Leisinger, 746 N.W.2d 739, 746 (S.D. 2008).

Several South Dakota statutes do contain a discovery rule. See, e.g., S.D.C.L. §§ 15-2-3, 26-10-25. These statutes have specific language tying the right to sue to the time when the wrong was discovered. Without such statutory provisions, South Dakota causes of action accrue upon occurrence. Alberts, 299 N.W.2d at 455. Baye's unusual mental illness does not empower a court to apply the discovery rule without legislative authorization. This was illustrated in Shippen, where the Supreme Court declined to apply a discovery rule for a sexual abuse victim whose "repression or post-

traumatic stress disorder" prevented discovery of his cause of action, for the "Legislature has yet to permit" courts to do so. 506 N.W.2d at 86.

Baye attempts to escape the accrual rule by rephrasing it in a narrower way. According to Baye, the South Dakota cases rejecting a discovery rule have disapproved only a "discovery of harm" rule, not a "discovery of tort rule." She urges that the limitations period should commence to run in her case only at the point at which she discovered she had been raped. Baye misreads Alberts and Shippen, for they make clear that her cause of action accrued when Scadron raped her because "[t]he legislature has specifically set up an 'occurrence' rule" applicable in cases of sexual abuse. Id. at 85; Alberts, 299 N.W.2d at 455.

In the cases in which the South Dakota Supreme Court has applied a discovery rule, it has done so in the types of actions for which the legislature has specifically provided one. See, e.g., Strassburg v. Citizens State Bank, 581 N.W.2d 510, 514–15 (S.D. 1998) (fraud action under S.D.C.L. § 15-2-3). Although the South Dakota legislature has approved a discovery rule for childhood sex abuse cases, see S.D.C.L. § 26-10-25, it has not chosen to do so for older victims, such as Baye who was twenty three years old when Scadron assaulted her. The district court did not err in holding that Baye's cause of action accrued in 1987.

B.

Baye also argues that the statute of limitations was tolled for two reasons until she recovered her memory. First, Baye argues that the diocese fraudulently concealed her rape. In South Dakota fraudulent concealment "tolls the statute of limitations until the cause of action is discovered or might have been discovered by the exercise of diligence." One Star v. Sisters of St. Francis, 752 N.W.2d 668, 681 (S.D. 2008). If a trust relationship exists between the parties, "an affirmative duty to disclose is imposed," and "mere silence" can amount to fraudulent concealment if the silent party

knew or should have known about the cause of action. Id. The district court assumed without deciding Baye and the diocese shared a trust relationship.

Baye has not identified any evidence showing that the diocese knew or should have known about Father Scadron's assault. She attacks Scadron's personal history and his professional weaknesses in an attempt to show that the diocese "should have known" about his "proclivities" and that it failed in its duty to disclose them to Baye. Nothing in this record indicates he had any "proclivity" toward sexual assault, however. Even if there were such signs, Scadron's work history would go to the diocese's liability for negligent hiring and supervision, not to fraudulent concealment. Baye does not argue that the diocese knew or should have known about Scadron's assault or about her mental illness. The district court did not err in holding that no fraudulent concealment occurred.

Next Baye argues that equity tolled the statutes of limitations until she recovered her memory in 2006. Under the doctrine of equitable tolling, a "plaintiff may sue after the statutory time period has expired if he has been prevented from doing so due to inequitable circumstances." Dakota Truck Underwriters v. South Dakota Subsequent Injury Fund, 689 N.W.2d 196, 202 (S.D. 2004). Any inequitable circumstances preventing a party from initiating a lawsuit suit must be "truly beyond the control of the plaintiff." Id. (internal citation omitted). For the equitable tolling doctrine to apply, "three things must be shown: '(a) a timely notice, (b) lack of prejudice to the defendant, and (c) reasonable and good-faith conduct on the part of the plaintiff.'" Id. (emphasis added).

Baye cannot show that her delay in bringing this action has not prejudiced the diocese. The diocese's most important witness, Father Scadron, died five years before Baye sued. If Baye had sued within the limitations period, even as extended by five years by her mental illness, Scadron could have testified in his own defense and that of the diocese. Baye argues that the inequity of a time bar for her claims outweighs

any prejudice to the diocese, but we have found no South Dakota authority suggesting any such inequity can overcome prejudice to a defendant. Dakota Truck requires a lack of prejudice for equitable tolling to apply, id., and the diocese has shown prejudice. Consequently we need not reach the other elements of the doctrine. The district court did not err in holding that prejudice to the diocese bars equitable tolling.

C.

Finally, Baye argues that under the doctrine of estoppel by duress the diocese may not raise the statute of limitations defense. Under the estoppel doctrine, a defendant who has continuously "threat[ened] or abuse[d]" the plaintiff during the limitations period is estopped from raising the defense. Zephier v. Catholic Diocese of Sioux Falls, 752 N.W.2d 658, 666 (S.D. 2008). To attempt to demonstrate threats, Baye points to Scadron's statement immediately after his assault that her children would die and go to hell if she told anyone of the rape. Scadron never threatened Baye again after the assault.

South Dakota has neither adopted nor rejected the doctrine of estoppel by duress, id., but it would not apply in this case even if the state recognized the doctrine. Estoppel "requires a showing that the duress be continuous." Id. Baye argues that Scadron's threats were so outrageous that they should be deemed continuous, but cites no authority in support. She further argues that her trauma induced personality dissociation continued until at least 2006 when she recovered her memory. Estoppel by duress requires, however, that the threats themselves continue up to the point that the plaintiff brings her action. See id. The district court did not err in declining to apply estoppel by duress.

## III.

The South Dakota statutes of limitations bar Pamela Baye's own claims as well as her husband's derivative claim. Recognizing that mental illness delays some plaintiffs in bringing their actions, the South Dakota legislature has added five years to the limitations period in every case where the plaintiff was mentally ill when the cause of action accrued. S.D.C.L. § 15-2-22. The extended eight year limitations period ran a decade before the Bayes brought their claims.

Even in cases of serious sexual abuse, the South Dakota Supreme Court has repeatedly declined to apply a longer limitations period than the state legislature has authorized. For example, the court declined to apply a discovery rule in Shippen since there was no legislative authorization for it. 506 N.W.2d at 85. And after the legislature enacted a discovery rule for childhood sex abuse claims, see S.D.C.L. § 26-10-25, the Supreme Court refused to delay claim accrual further by broadening "discovery" beyond its statutory meaning. One Star, 752 N.W.2d at 679–80. With this authority in mind, we hold that the Bayes' claims are time barred.

For these reasons we affirm the judgment of the district court.

_____