**Mary Jeanne COOK, Mary Jeanne Cook as Trustee of the Mary Jeanne Cook, Inter Vivos Trust Dated February 6, 1986 and Cook Limited Partnership, Appellants,**

v.

**DeSOTO FUELS, INC., Respondent.**

**No. ED 84514.**

Missouri Court of Appeals, Eastern District, Division Three.

Aug. 2, 2005.

---

Kurt D. Breeze, Festus, MO, for respondent.

Morry S. Cole, St. Louis, MO, for appellant.

## OPINION

GLENN A. NORTON, Judge.

Property owners sued DeSoto Fuels, Inc., alleging that gasoline leaking from tanks at DeSoto's gas station had contaminated their land and groundwater. The trial court granted summary judgment in favor of DeSoto based on the statute of limitations, and the property owners appeal. We reverse and remand.

## I. BACKGROUND

DeSoto owned and operated an Amoco gas station located near property owned by Claude and Mary Jeanne Cook. At some point, a leak allegedly developed in at least one of the three underground storage tanks ("USTs") that supplied the sta-

tion with gasoline, resulting in the contamination of the Cooks' property.

The Cooks had two wells on their property. One well provided water for the Cooks' own residence and the other supplied water to a residence that the Cooks rented out to tenants. One of the Cooks' tenants noticed a strong odor of gasoline and a rainbow sheen in the water and reported this to the Missouri Department of Natural Resources. In July of 1993, the Department tested the well supplying the rental property for contamination. At some point during that year, Claude Cook also noticed that the water had an odor and he became aware that the Department's tests showed the presence of contaminants.

The Department tested the water in both of the wells in December of 1993. The Department's Preliminary Report, issued on March 25, 1994, indicated that the water from both of the Cooks' wells was contaminated with constituents of gasoline. The report identified four nearby gas station sites, including DeSoto's gas station, as possible sources of the pollution. The Department concluded that additional work was needed to determine which of those four sites was the source of the contamination. Also in March of 1994, the Cooks drilled a new well on the property "as a precaution." This new well became contaminated within a month, so the Cooks had their residence connected to the city water supply.

On March 8, 1996, the Department issued its Final Report. It described the

existence of contamination and again identified the same four potentially responsible parties, including DeSoto, which by then had ceased operating its gas station. The following year, the Department installed two groundwater monitoring wells in an effort to identify the cause and source of the contamination. In September of 1997, the Department issued an addendum to its Final Report, this time identifying DeSoto's former Amoco station as the sole source of the contamination.

The record does not reveal when the Cooks had actual notice of any of the Department's reports. But in August of 2000, the Cooks entered into a contract to sell their property, and the prospective buyer's investigation revealed an unacceptable level of contamination. After the contract was cancelled, the Cooks hired counsel, who discovered and reviewed the Department's files.

The Cooks [1] filed their petition against DeSoto and two other defendants on March 30, 2001, claiming negligence, trespass and private nuisance.[2] The Cooks alleged that the defendants "failed to undertake adequate measures to prevent or to detect the releases" that caused the contamination of the Cooks' property and that the defendants knew or should have known about the releases. The Cooks further alleged that they did not know about the extent of the damage to their property until they attempted to sell it in 2000. The Cooks claimed that the defendants' conduct resulted in the continuing entry, trespass, or intrusion onto their property and that the defendants continued to unreason-

---

1. The original plaintiffs were Claude and Mary Jeanne Cook, in their individual capacities and as trustees of their separate *inter vivos* trusts, and the Cook Limited Partnership. The Cooks have since died, and the Partnership currently owns the property. For ease of reference, we will refer to the plaintiffs collectively as the Cooks.

2. The other defendants later settled with the Cooks or were dismissed from the action, leaving DeSoto as the sole remaining defendant. The Cooks' unjust enrichment claim was dismissed, and is not at issue on appeal. Since there is no claim of a public nuisance in this case, any further references to nuisance law pertain to private nuisances.

ably interfere with the Cooks' use and enjoyment of their property by releasing chemicals onto their property.

Amoco, one of the original defendants, moved for summary judgment based on the statute of limitations. DeSoto filed a separate motion, stating that it "affirmatively adopts as its own and joins in" Amoco's motion for summary judgment. While Amoco's motion was pending and before it was noticed for hearing, Amoco was dismissed from the lawsuit and withdrew its motion for summary judgment. Subsequently, DeSoto withdrew its motion for summary judgment, but later filed another motion seeking to "readopt and reassert" Amoco's motion for summary judgment as DeSoto's own, including the arguments and assertions in Amoco's supporting memorandum and exhibits. The Cooks filed a motion to strike DeSoto's motion based on a failure to comply with Rule 74.04, which the trial court denied. The court granted summary judgment in favor of DeSoto based on the five-year statute of limitations in section 516.120 RSMo 2000.[3] The Cooks appeal.

## II. DISCUSSION

Whether summary judgment is appropriate is a question of law, and therefore our review is *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria for testing the propriety of summary judgment on appeal are the same as those employed by the trial court. *Id.* We must determine whether DeSoto, as the party seeking summary judgment, has established an undisputed right to judgment as a matter of law. *See id.* at 380. "Insofar as the movant's right to judgment as a matter of law depends upon the presence or absence of certain facts, the movant must also establish ...

that there is no genuine dispute about those material facts." *Id.* We review the record in a light most favorable to the party against whom judgment was entered, here the Cooks. *See id.* at 376. Nevertheless, the facts set forth in support of DeSoto's motion for summary judgment are taken as true unless contradicted by the Cooks' response. *See id.*

DeSoto, as a defending party, may establish a right to judgment as a matter of law by showing that there is no genuine dispute about each of the facts necessary to support a properly-pled affirmative defense. *See id.* at 381. If DeSoto made this *prima facie* showing under Rule 74.04(c), then the Cooks bore the burden of responding with specific facts showing the existence of a genuine issue for trial. *See id.*

### A. Adoption of Another Party's Motion for Summary Judgment

■ The Cooks argue that DeSoto's motion for summary judgment was procedurally deficient in that it did not follow the requirements of Rule 74.04 and contend that the court should not be expected to "sift through" the abandoned motion of a dismissed defendant to determine which facts support DeSoto's motion.

The Cooks do not cite, and we cannot find, any authority that would have precluded DeSoto from adopting Amoco's motion for summary judgment as its own. Nor do the Cooks explain how they suffered any prejudice because of this procedure. As the trial court noted, this practice is not uncommon. *See, e.g., Hudson v. Riverport Performance Arts Centre,* 37 S.W.3d 261, 263 (Mo.App. E.D.2000) (acknowledging one party's adoption of another party's motion for summary judgment, without addressing the propriety of this

3. All statutory references are to RSMo 2000, unless otherwise noted.

procedure); *Southwest Bank of Polk County v. Hughes,* 883 S.W.2d 518, 519 (Mo.App. S.D.1994) (same). Under the circumstances of this case—where the same facts and reasoning applied to Amoco's and DeSoto's arguments and where Amoco's motion complied with Rule 74.04—the adoption of a former co-defendant's motion for summary judgment was not inappropriate. In fact, permitting De-Soto to adopt Amoco's abandoned motion promoted efficiency and judicial economy without imposing any additional burden on opposing counsel or the Cooks.

Point denied.

## B. Statute of Limitations

■ Whether the statute of limitations bars a lawsuit depends on the nature of the cause of action and when the action accrued. *Schwartz v. Mills,* 685 S.W.2d 956, 958 (Mo.App. E.D.1985). Here, the parties disagree about both. DeSoto argues that the five-year statute of limitations in section 516.120 governs this action and that the Cooks' alleged damages were capable of ascertainment more than five years before the lawsuit was filed. While the Cooks do not challenge whether that five-year period of limitation applies, they do claim that the record is insufficient to prove that the damage to their property was capable of ascertainment more than five years prior to the filing of their petition. They claim that there was no evidence of when the Department's reports were received by the Cooks or made available to the public and that they filed their petition less than five years after the Department released the document identifying DeSoto as the responsible party. Further, the Cooks argue that their claims are separable as to each accrued injury be-

cause the contamination of their property constitutes a continuing trespass or a temporary nuisance.[4] DeSoto responds that the facts of this case do not support either a continuing trespass or a temporary nuisance theory because there was only "one leak of gasoline, which has remained in the ground."

We conclude that the Cooks' causes of action initially accrued more than five years before they filed this lawsuit because the damage to their property and its cause were capable of ascertainment more than five years prior to this lawsuit. Nevertheless, DeSoto has not established that the Cooks' claims are totally time-barred because they have asserted claims for a continuing trespass and a temporary nuisance and therefore can recover for those damages that accrued within the statutory period preceding this lawsuit—namely, five years for the trespass claim and ten years for the nuisance claim.

■ We begin our discussion by noting that, while there are differences between a trespass and a nuisance cause of action, the two are neither mutually exclusive nor inconsistent. RESTATEMENT (SECOND) OF TORTS section 821D cmt. e (1979). Thus, where the elements of both actions are fully present, plaintiffs may choose to proceed upon one or both theories. *Id.* While trespass involves interference with the plaintiffs' possessory rights and requires an intentional act that results in a physical invasion of the plaintiffs' property, nuisance involves an unreasonable land use that interferes with the plaintiffs' right of enjoyment and does not require an intentional act. *See Frank v. Environmental Sanitation Management, Inc.,* 687 S.W.2d 876, 879–80 (Mo. banc 1985); *Looney v.*

---

4. On appeal, the Cooks do not challenge the propriety of summary judgment as to their negligence claim.

*Hindman,* 649 S.W.2d 207, 212–14 (Mo. banc 1983); *Thomas v. City of Kansas City,* 92 S.W.3d 92, 97–98 (Mo.App. W.D. 2002); *Maryland Heights Leasing, Inc. v. Mallinckrodt, Inc.,* 706 S.W.2d 218, 221, 224–26 (Mo.App. E.D.1985). A nuisance can be based on the defendant's negligence or on the existence of a "continuing known invasion" that the defendant failed to remedy despite the plaintiffs' complaints. *Frank,* 687 S.W.2d at 881–82. Certain types of physical invasions can constitute both a trespass and a nuisance. *See Maryland Heights,* 706 S.W.2d at 221, 224–26 (use of radioactive materials resulting in emission of radiation can constitute both trespass and nuisance); *Rosenfeld v. Thoele,* 28 S.W.3d 446, 449–50 (Mo.App. E.D.2000) (placement of debris on neighbor's property can constitute both trespass and nuisance). The Cooks' allegations that DeSoto caused gasoline to enter their property can constitute a claim for both trespass and nuisance because that contamination involves a direct physical invasion that interferes with both the right to possession and the use and enjoyment of property. We now consider whether these claims are time-barred.

### 1. Trespass

The Cooks' trespass claim is governed by the five-year statute of limitations in section 516.120. *Thomas,* 92 S.W.3d. at 100. This type of action does not accrue "when the wrong is done," but rather "when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained." Section 516.100. "In common parlance, 'capable of ascertainment' may be construed to mean capable of being ascertained by a reasonable person using reasonable diligence." *Lockett v. Owens–Corning Fiberglas,* 808 S.W.2d 902, 907 (Mo.App. E.D.1991). Whether damages are capable of ascertainment is an objective test, ordinarily decided as a matter of law. *Carr v. Anding,* 793 S.W.2d 148, 150 (Mo.App. E.D. 1990). It is met when the plaintiffs' right to sue arises and they could have first maintained the action successfully. *Id.* This occurs when the damage is substantially complete and the fact of damage can be discovered or made known, even if the exact amount of damage is not yet ascertainable, even if some additional damage may occur in the future and even if the plaintiffs have not actually discovered the injury. *See Lockett,* 808 S.W.2d at 907; *Modern Tractor and Supply Co. v. Leo Journagan Construction Co., Inc.,* 863 S.W.2d 949, 952 (Mo.App. S.D.1993); *Jordan v. Willens,* 937 S.W.2d 291, 294 (Mo. App. W.D.1996). It has been said that knowledge of a trespass is sufficient to begin the running of the statute of limitations. *Jordan,* 937 S.W.2d at 295 n. 6.

Here, the Cooks had actual knowledge of the fact that their property had been damaged by April of 1994 when their new well became contaminated, if not sooner. But, when viewing the record in a light most favorable to the plaintiffs, it appears that the plaintiffs were not kept informed about the status of the Department's investigations and were not immediately made aware that the Department's reports identified DeSoto as one of four parties potentially responsible for causing the contamination. Although it is not clear from the record when the plaintiffs had actual notice of those reports, actual notice is not required under the "capable of ascertainment" test.

We find that the Cooks were capable of ascertaining DeSoto's identity as one of four possible tortfeasors by early March in 1996, if not sooner, since by then the Department had finished its second report

suggesting that DeSoto may be the source of the contamination, and almost two years had elapsed since the Cooks began using the municipal water supply instead of their own well. Even if the Department failed to keep the Cooks informed about who might have been responsible for the contamination, a reasonable person would have inquired about the status of the investigation by that time.

We note that there is some authority for the proposition that a cause of action does not accrue until both the damages and the cause of those damages are reasonably ascertainable. *See, e.g., Elmore v. Owens–Illinois, Inc.,* 673 S.W.2d 434, 436 (Mo. banc 1984); *Shade v. Missouri Highway and Transportation Commission,* 69 S.W.3d 503, 514 (Mo.App. W.D.2001); *but see, e.g., King v. Nashua Corp.,* 763 F.2d 332, 333 (8th Cir.1985) (stating that "Missouri courts have made it clear that [section 516.100] focuses on the damage and not the discovery of its cause"). But even if an action does not accrue until the cause of the damage is capable of ascertainment, in this case the Cooks certainly should have known about both the damage (groundwater contamination) and its cause (gasoline from nearby USTs) more than five years prior to this lawsuit.

The Cooks suggest that the action did not accrue until after the Department released its addendum in 1997 that identified DeSoto as the sole source of the contamination. We disagree. While neither party cites any case where the plaintiffs knew *what* caused their injuries but were temporarily unable to ascertain precisely *who* was responsible for the damage, at least one Missouri case has rejected the argument that the plaintiff's inability to discover the identity of the tort-feasor should delay the accrual of the cause of action. *See Frazee v. Partney,* 314 S.W.2d 915, 916–17, 920–21 (Mo.1958) (wrongful death

action resulting from an automobile accident where the defendant, who caused the accident but then drove away, was not identified within the limitations period). Given the small number of reasonably ascertainable potentially responsible parties identified by the Department in this case, we find that the accrual of this action should not be delayed by the Cooks' failure or inability to ascertain precisely which of the four potentially responsible parties actually caused their damages.

Therefore, with respect to the initial invasion of contaminants, the Cooks' cause of action accrued before March 30, 1996, more than five years before this lawsuit was filed. Thus, unless the Cooks have also alleged a continuing trespass, their trespass claim would be totally barred by the statute of limitations.

### 2. Continuing Trespass

 In the "peculiar and particular circumstances" where a "continuing or repeated wrong" is involved, an additional layer of analysis is required to determine when the cause of action accrued with respect to each successive trespass under section 516.100:

> if the wrong done is of such a character that it may be said that all of the damages, past and future, are capable of ascertainment in a single action so that the entire damage accrues in the first instance, [then] the statute of limitation begins to run from that time. If, on the other hand, the wrong may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable of being terminated, [then] a right of action exists for the damages suffered within the statutory period immediately preceding suit.

*Davis v. Laclede Gas Co.,* 603 S.W.2d 554, 556 (Mo. banc 1980) (construing section 516.100 RSMo 1969). In order for this

analysis to apply, "the wrong must be continuing or repeating." *D'Arcy and Associates, Inc. v. K.P.M.G. Peat Marwick, L.L.P.,* 129 S.W.3d 25, 30 (Mo.App. W.D. 2004). As this Court has stated, when there is only *one wrong* that results in continuing damage, the cause of action accrues once that wrong has been committed and the resulting damage becomes capable of ascertainment. *Arst v. Max Barken, Inc.,* 655 S.W.2d 845, 847 (Mo.App. E.D. 1983). But when there are *continuing or repeated wrongs* that are capable of being terminated, successive causes of action accrue every day the wrong continues or each time it gets repeated, the end result being that the plaintiff is only barred from recovering those damages that were ascertainable prior to the statutory period immediately preceding the lawsuit. *See Davis,* 603 S.W.2d at 556; *Cacioppo v. Southwestern Bell Telephone Co.,* 550 S.W.2d 919, 925 (Mo.App.1977). The continuing wrong doctrine has been applied in both nuisance and trespass cases:

> A continuing trespass upon real property creates separate causes of action, which are barred only by the running of the statute against the successive trespasses, and not by the running of the statute from the time of the original trespass. So, also, if a trespass is followed by injury constituting a continuing nuisance, the damages for the original trespass must all be recovered in one action, but successive actions may be brought to recover damages for the continuation of the wrongful conditions, and in these the damages are estimated only to the date of the bringing of each suit, and the statute of limitations does not begin to run from the date of the original trespass. In the case of a continuing trespass the statute does not begin to run from the date of the original entry, but recovery may be had for a period of time not exceeding the statutory period

immediately preceding the institution of the action. Thus, in case of a continuous trespass for a series of years, the action is barred as to so much only of the wrong as was committed prior to the term of limitation.

*Cacioppo,* 550 S.W.2d at 925 (quotation marks omitted).

In this case, the Cooks have alleged that DeSoto's negligence has caused an underground flow or migration of contaminants onto their property. But DeSoto's negligence is not the relevant wrong for purposes of analyzing whether the Cooks have alleged a continuing trespass. Rather, the wrong is the actual physical invasion of the Cooks' property. Thus, the relevant question is whether the Cooks have alleged a continuous or repeated invasion of their property. The Cooks claim that DeSoto's conduct resulted in the "continuing entry, trespass, and intrusion onto Plaintiffs' property by the petroleum products from the Station without Plaintiffs' permission." The petition also refers to "the releases" in the plural form. Although the petition is not very specific, we find that the Cooks have adequately alleged the existence of a continuous, ongoing, intermittent, or repeated flow or migration of contaminants from DeSoto's property onto their property. In this way, the Cooks have alleged the type of "fresh injury from day to day" described in *Davis. See* 603 S.W.2d at 556. They seek damages for the cleanup and restoration of their property, and there is nothing in the record to suggest that this is the type of wrong that is not capable of being terminated.

In its brief, DeSoto asserts that this case involves only a single leak of gasoline. We agree that the existence of a single leak or migration of contaminants would not constitute a continuing wrong, even if the contaminants remained present in the ground. *See Modern Tractor,* 863 S.W.2d

at 951–54 (unauthorized presence of fill dirt on plaintiff's property did not constitute continuing trespass). The mere presence of contaminants does not reveal whether there was one wrong resulting in continuing damage, or whether there were continuous or repeated wrongs that created fresh injuries from day to day and were capable of being terminated. *See Davis,* 603 S.W.2d at 556. But as explained above, the Cooks have alleged the existence of a continuous or repeated migration of contaminants onto their property. And we find nothing in DeSoto's motion for summary judgment or elsewhere in the record that supports its factual assertion about the nature of the leak.

■■■ Therefore, the Cooks have adequately presented a continuing trespass claim, which, if proven, would permit them to recover for those damages that accrued within the five-year period preceding this lawsuit. But under their trespass theory, they are barred from recovering any damages that were capable of ascertainment more than five years before the lawsuit; that is, before March 30, 1996.

### 3. Temporary Nuisance

■■■ The parties disagree about how to characterize the Cooks' nuisance claim. A nuisance can be either permanent or temporary. *Rebel v. Big Tarkio Drainage District of Holt City,* 602 S.W.2d 787, 792–93 (Mo.App. W.D.1980), *overruled on other grounds by Frank v. Environmental Sanitation Management, Inc.,* 687 S.W.2d 876, 880 n. 3 (Mo. banc 1985). This distinction has important consequences, yet determining "[w]hether a particular nuisance is 'permanent' or 'temporary, continuing or abatable' is one of the most baffling areas of the law." *Spain v. City of Cape Girardeau,* 484 S.W.2d 498, 503–504 (Mo.App.1972). A nuisance is temporary if it is abatable; it is permanent if abatement is impracticable or impossible.

*Hanes v. Continental Grain Co.,* 58 S.W.3d 1, 3 (Mo.App. E.D.2001). It need not be shown that the entire nuisance can be eliminated in order for the nuisance to be characterized as temporary; rather, it is only necessary that the nuisance can be reduced or lessened to the point that it no longer constitutes a "substantial" interference. *Id.* at 4.

■■■ In determining whether a nuisance is permanent or temporary, the character of the source of the injury—not the character of the injury itself—is determinative. *Rebel,* 602 S.W.2d at 793. The fact that an injury stems from a permanent structure, however, does not necessarily mean that the resulting nuisance is a permanent one. *Id.* If the source of the injury is a permanent construction that is necessarily injurious as installed, such that the inherent character of the structure will cause injury even in its usual and lawful operation, then the nuisance is characterized as permanent. *Id.* at 793–94; *Shelley v. Ozark Pipe Line Corporation,* 327 Mo. 238, 37 S.W.2d 518, 519 (1931). But if the source of the injury is a structure that is not inherently injurious but only becomes harmful through its use—such as, through negligence or failure to maintain the structure—then the nuisance is characterized as temporary. *Shelley,* 37 S.W.2d at 519–20; *Rebel,* 602 S.W.2d at 793–94; *Schwartz,* 685 S.W.2d at 959.

■■■ Nuisance claims involving environmental contamination have sometimes been characterized as permanent and other times as temporary. *See, e.g., Frank,* 687 S.W.2d at 883 (finding that an award of permanent damages was appropriate where leachate had escaped from defendant's landfill and caused permanent damage to the plaintiff's property despite expensive and sophisticated leachate control plans); *but see, e.g., Hanes,* 58 S.W.3d at

3–4 (finding that odors and contamination from the defendant's hog farms constituted a temporary and abatable nuisance); *Shelley*, 37 S.W.2d at 520 (leak in oil pipeline caused by the defendant's negligence was deemed a temporary nuisance). Although the cases distinguishing between temporary and permanent nuisances are not always consistent, there appears to be at least one constant: "a nuisance created by negligence is a temporary one." *Spain*, 484 S.W.2d at 504. And where the nature of the cause of action is doubtful as between a temporary or permanent nuisance, courts should treat it as temporary. *Thomas*, 92 S.W.3d. at 101; *Schwartz*, 685 S.W.2d at 958.

▓▓▓▓ The effect of characterizing a nuisance as permanent is to "give the defendant, because of his wrongful act, the right to continue the wrong; a right equivalent to an easement." *Schwartz*, 685 S.W.2d at 958. But if a nuisance is characterized as temporary, then the defendant is under the legal obligation to terminate the injury. *Rebel*, 602 S.W.2d at 792–93 (citing *Shelley*, 37 S.W.2d at 521). For each type of nuisance, different types of damages are recoverable, and the relevant statute of limitations is applied differently. For a permanent nuisance, there can be only one recovery for what is deemed to be a single tortious act, and the limitations period begins immediately upon the creation of the nuisance—such as when the structure is completed or installed—or once the tortious effect manifests itself. *See Schwartz*, 685 S.W.2d at 959 (citing *Rebel*, 602 S.W.2d at 792). But for a temporary nuisance, much like a continuing

trespass,[5] the continuance of the nuisance each day is considered a repetition of the original wrong, and successive actions accrue as to each injury:

> The period of limitations as to a temporary nuisance[ ] runs anew from the accrual of injury from every successive invasion of interest. The recovery is for the damage actually sustained to the commencement of suit, but not for prospective injury.... The right to a successive action for the continuance of a nuisance rests on the principle that the tort-feasor ... is under [a] legal obligation to remove, change, or repair the structure or thing complained of, and thereby terminate the injury to his neighbor; and, failing so to do, each day's continuance of the nuisance is a repetition of the original wrong, and a new action will lie therefor.

*Rebel*, 602 S.W.2d at 792–93 (quotation marks omitted). And, again similar to a continuing trespass theory, the plaintiffs' recovery for a temporary nuisance is limited to those damages that accrued within the relevant limitations period immediately preceding the lawsuit.

▓▓▓▓ Claims of permanent nuisance are governed by the five-year statute of limitations in section 516.120. *Thomas*, 92 S.W.3d. at 100. Although the parties have failed to address whether this statute also applies to claims of temporary nuisance, Missouri courts have repeatedly held—often citing section 516.010—that a ten-year period of limitation applies to temporary nuisances.[6] *Moore v. Weeks*, 85 S.W.3d

---

5. In fact, the concept of a temporary nuisance appears to be essentially an application of continuing wrong principles to situations involving nuisances.

6. Under section 516.010, "[n]o action for the recovery of any lands, tenements or hereditaments, or for the recovery of the possession

thereof, shall be commenced, had or maintained by any person ... unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action."

709, 719 (Mo.App. W.D.2002); *Thomas*, 92 S.W.3d. at 100; *Shade*, 69 S.W.3d at 509–10; *Campbell v. Anderson*, 866 S.W.2d 139, 142 (Mo.App. W.D.1993); *Rebel*, 602 S.W.2d at 794 n. 7; *City of Fredericktown v. Osborn*, 429 S.W.2d 17, 24 (Mo.App. 1968). Our own research revealed only one case suggesting that the five-year period of limitation in section 516.120 applies to temporary nuisance claims, but that suggestion was not dispositive because in that case, the lawsuit was not even barred under the shorter limitations period. *See Scantlin v. City of Pevely*, 741 S.W.2d 48, 50 (Mo.App. E.D.1987). We find that the ten-year limitations period applies.

Here, the Cooks have alleged that DeSoto continues to unreasonably interfere with their use and enjoyment of their property by "releasing" chemicals onto it. They claim that the source of their injury is one or more of DeSoto's leaking USTs and that DeSoto knew or should have known about the releases. These allegations could constitute a nuisance resulting from either negligence or a continuing known invasion. *See Frank*, 687 S.W.2d at 881–82. Instead of alleging that an underground gasoline storage tank inherently causes injury to nearby property in the course of its usual and lawful operation, the Cooks assert that the leaking USTs that caused the contamination have become injurious because of DeSoto's negligence in operating its gas station. *See, e.g., Shelley*, 37 S.W.2d at 520 (leak in oil pipeline caused by the defendant's negligence was deemed a temporary nuisance). Therefore, the Cooks have adequately presented a temporary nuisance claim. *See Spain*, 484 S.W.2d at 504 ("a nuisance created by negligence is a temporary one"). If proven, they are allowed to recover those damages that accrued within the ten-year period preceding this lawsuit, that is, since March 30, 1991, which appears to encompass all of their damages from the nuisance.

Point granted.

### C. Summary and Disposition

In sum, DeSoto has failed to establish the facts necessary to support its affirmative defense that the Cooks' claims are barred by the statute of limitations. Therefore, summary judgment was inappropriate. *See ITT*, 854 S.W.2d at 381. The Cooks may proceed with their claims to the following extent. Under the trespass count, the Cooks can no longer recover for damages resulting from the initial invasion of contaminants, but they are entitled to seek damages arising from any continued migration or seepage of contaminants onto their property within the five-year period preceding this lawsuit. Under the temporary nuisance count, the Cooks are entitled to seek damages arising from the continued unreasonable interference with their enjoyment of the property within the ten-year period preceding this lawsuit. We express no opinion as to whether the damages recoverable under these two counts are the same.

### III. CONCLUSION

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

CLIFFORD H. AHRENS, P.J. and NANNETTE A. BAKER, J. concurring.