Herbert A. GRAHAM, Appellant,

v.

Father Michael McGRATH, Roman Catholic Archdiocese of St. Louis, an unincorporated association, and Archbishop Justin Rigali, of the Archdiocese of St. Louis, MO., Respondents.

No. ED 89168.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 11, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 16, 2008.

Application for Transfer Denied
Feb. 19, 2008.

Kenneth Michael Chackes, Mary Susan Carlson, Co–Counsel, Chackes, Carlson, Spritzer & Ghio LLP, St. Louis, MO, Patrick Wendell Noaker, Co–Counsel, St. Paul, MN, Rebecca M. Randles, Co–Counsel, Randles, Mata & Brown LLC, Kansas City, MO, for appellant.

Edward M. Goldenhersh, Bernard C. Huger, Co–Counsel, David Paul Niemeier, Greensfelder, Hemker, & Gale, P.C., Co–Counsel, St. Louis, MO, Michael S. McGrath, J. Marti Hadican, P.C. & Assoc., Joseph M. Hadican, Clayton, MO, for respondents Justin F. Rigali and Roman Catholic Archdiocese of St. Louis.

ROY L. RICHTER, Presiding Judge.

This appeal arises from the grant of summary judgment against Herbert A. Graham ("Plaintiff") in favor of the Archdiocese of St. Louis and Archbishop Rigali (collectively, "Archdiocese").[1] The trial court certified that its November 22, 2006 "Order and Final Judgment as to Defendants Archdiocese and Archbishop Rigali" constituted a final judgment as to the claims decided therein and that there was no just reason for delay, pursuant to Rule 74.01(b).[2] Finding no error, we affirm.

---

**1.** Archbishop Rigali was sued only in his representative capacity and not in any personal capacity. On January 26, 2004, Archbishop Burke was installed as Archbishop of St. Louis. Archbishop Burke succeeds Cardinal Justin Rigali, who was installed as Archbishop of Philadelphia on October 7, 2003.

**2.** "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination

## I. Background

Plaintiff, born on July 29, 1972, alleges that between 1983 and 1986 he was repeatedly sexually abused by a Catholic Priest, Father Michael McGrath ("Priest"). On July 8, 2003, Plaintiff filed a ten-count petition against Archdiocese and Priest. Nine of the counts were pled against Archdiocese and one count was pled solely against Priest.[3] Archdiocese moved for summary judgment, arguing that all of Plaintiff's claims were time barred under the statute of limitations.[4]

Plaintiff alleges that Priest fondled his leg and genitals, kissed, groped and caressed him. Plaintiff alleges that these acts of abuse frequently occurred when Priest took him and other boys on "fun outings," like go-carting and visiting a local frozen custard store. According to Plaintiff, Priest allowed Plaintiff to drive during these outings, even though Plaintiff was underage. Plaintiff alleges that some of the sexual abuse occurred while Plaintiff was driving. Plaintiff states that Priest did not physically hurt Plaintiff at the time of the alleged molestations.

While Plaintiff has admitted that he always had memory of the events of abuse, Plaintiff avers he did not always understand that these acts constituted sexual abuse. Plaintiff's expert witness testified in a supplemental affidavit that Plaintiff's process of understanding that he was abused occurred sometime between 1995 and 1998. In 1995 and 1996, Plaintiff informed his mother, his then-wife, and a friend about the acts of sexual abuse. In 1998, Plaintiff confronted Priest regarding the past incidents of sexual abuse and asked him "if you claim to love us kids, why did you do things to hurt us?" Priest responded by stating that he loved Plaintiff and would never hurt him.

In February 1999, Plaintiff contacted an attorney regarding his sexual abuse claim against Priest. However, approximately seven months thereafter, Plaintiff had a motorcycle accident which caused him to suffer a traumatic brain injury, leaving him comatose for over a month.

In 2005, the trial court granted Archdiocese's motion for summary judgment in part, holding that all but one of Plaintiff's claims were time barred by the statutes of limitations. *See* Section 516.100 RSMo 2000[5] and Section 516.120(4). The trial court held that the remaining claim, Plaintiff's cause of action under Count I for Child Sexual Abuse, was governed by a separate statute of limitations and it was not clear based on the record whether this claim was time barred. *See* Section 537.046.

---

that there is no just reason for delay." Rule 74.01(b).

**3.** The nine counts pleaded against Archdiocese include: Count I—Child Sexual Abuse and/or Battery; Count II—Breach of Fiduciary Duty; Count III—Fiduciary Fraud and the Conspiracy to Commit Fiduciary Fraud; Count IV—Fraud and Conspiracy to Commit Fraud; Count V—Intentional Infliction of Emotional Distress; Count VII—Negligence, Count VIII—Vicarious Liability (Respondeat Superior); Count IX—Negligent Supervision, Retention and Failure to Warn; and Count X—Intentional Failure to Supervise Clergy. Counts I, II, III, IV and VII were pleaded against all Defendants. Counts V, VIII, IX and X were pleaded solely against Archdiocese. Count VI was pleaded only against Priest.

**4.** In addition, Archdiocese argued that summary judgment was proper because all of Plaintiff's claims, except Count X, failed to state claims upon which relief can be granted against Archdiocese. The trial court did not decide this issue.

**5.** All further statutory references are to RSMo 2000, unless otherwise indicated.

Archdiocese then filed a motion for summary judgment on the remaining Count I of Plaintiff's petition and the trial court granted this motion on November 1 2006, holding that Plaintiff's claim under Count I for child sexual abuse was time barred under Section 537.046.

In August 2006, Plaintiff submitted a motion for reconsideration of the trial court's August 2005 Order based upon *Powel v. Chaminade College Preparatory, Inc.*, 197 S.W.3d 576 (Mo. banc 2006). On November 22, 2006, the trial court denied Plaintiff's motion for reconsideration and issued its Order and Final Judgment as to the Archdiocese under Rule 74.01(b).

### Discussion

Our review of a summary judgment is essentially de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We view the evidence and all reasonable inferences in the light most favorable to the party against whom judgment was entered. *Id.* Summary judgment is appropriate when there exist no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c).

In his first three points on appeal, Plaintiff argues that the trial court's granting of summary judgment on the grounds that Plaintiff's claims were barred by the statute of limitations pursuant to Section 516.100 and Section 516.120 erroneously violated recent Supreme Court precedent, *Powel v. Chaminade*. We disagree.

Section 516.120 governs all of Plaintiff's claims against Archdiocese, except for Plaintiff's cause of action under Count I for Child Sexual Abuse. Section 516.120(4) provides that an action "for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated" must be brought within five years of when the cause of action accrues. When a person's cause of action accrues when they are under the age of twenty one years, the statute of limitations does not begin to run until that person reaches the age of twenty one years. Section 516.170.

Although the parties agree that the statute of limitations was tolled until Plaintiff reached the age of twenty one, they disagree about when the Plaintiff's cause of action accrued. Specifically, the parties disagree as to when Plaintiff's damages were capable of ascertainment. A cause of action does not necessarily accrue at the time of the acts giving rise to it, "but when the damage resulting therefrom is capable of ascertainment, and if more than one item of damage, then the last item, so that all resulting damage may be recovered and full and complete relief obtained." Section 516.100. Recently, the Missouri Supreme Court clarified when damages are "capable of ascertainment" under Section 516.100. *Powel*, 197 S.W.3d at 584–85.

In *Powel*, the Missouri Supreme Court explained that, in determining when damages are capable of ascertainment, "the issue is not when the injury occurred, or when plaintiff subjectively learned of the wrongful conduct and that it caused his or her injury, but when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Id.* at 584. Although *Powel* specifically dealt with a victim of childhood sexual abuse whose memory was repressed, its holding that "the capable of ascertainment standard is an objective one" nevertheless applies here and governs our interpretation of "capable of ascertainment" under Section 516.100. *Id.* at 585.

■ Plaintiff argues that his damages were not capable of ascertainment until 1998 or thereafter because a reasonable person in Plaintiff's position could not have ascertained his injury at any time prior to 1998. To support this argument, Plaintiff states that, despite knowledge of the wrongful acts, he was not aware that he had been injured by the acts of Priest until 1998 or thereafter. However, the issue is not when a plaintiff is *subjectively* aware of his injury; subjective awareness of damages does not resolve the question of when those damages were *objectively* capable of ascertainment. *See Powel*, 197 S.W.3d at 584. While a child victim may be unable to immediately recognize such harm, we fail to see how this inability prevents an adult with memory of the events of abuse from being on notice that harm may have occurred. *See Id.*

As additional support for his argument that damages were not capable of ascertainment until 1998, Plaintiff points to his expert witness' testimony that Plaintiff's process of coming to an understanding that he was abused took place between 1995 and 1998. First, we note that Plaintiff again seeks to employ a subjective standard to determine when damages are capable of ascertainment. However, the Missouri Supreme Court specifically rejected such an approach in favor of an objective reasonable person standard. *Powel*, 197 S.W.3d at 584. In addition, because "all possible damages do not have to be known, or even knowable, before the statute accrues," the date Plaintiff completed his psychological process of uncovering is irrelevant. *Id.* (quoting *Klemme v. Best*, 941 S.W.2d 493, 497 (Mo. banc 1997)).

Under *Powel*, damages are capable of ascertainment when "the evidence [is] such to place a reasonably prudent person on notice of a potentially actionable injury." *Powel*, 197 S.W.3d at 583 (quoting *Business Men's Assur. Co. of America v. Graham*, 984 S.W.2d 501, 507 (Mo. banc. 1999)). In 1995, Plaintiff had both knowledge of the acts constituting sexual abuse, and was at the very least beginning to understand that he was a victim of sexual abuse. Therefore, Plaintiff had " 'reason to question' defendant's conduct" and "information sufficient 'to place a reasonably prudent person on notice of a potentially actionable injury.' " *Id.* at 584. Further, between 1995 and 1996, Plaintiff informed his mother, wife, and a friend of the facts underlying his child sexual abuse claim.[6] The fact that Plaintiff, for the first time, made the decision to confide in his loved ones about the events of abuse in 1995 and 1996 demonstrates that the evidence was sufficient at this time "to place a reasonably prudent person on notice of a potentially actionable injury." *Id.*

In 1995 and 1996, Plaintiff had memory of the acts constituting sexual abuse, he was beginning to understand that he was a victim of sexual abuse, and he confided in his loved ones about these acts. These facts show that the evidence was then sufficient to put a reasonable person on notice that "an injury and substantial damages may have occurred;" therefore, Plaintiff's damages were capable of ascertainment in 1996 at the latest. *Powel*, 197 S.W.3d at 584. Because Plaintiff filed his claim more than five years later in 2003, his causes of action against Archdiocese are barred by the statute of limitations. Section 516.120(4). Points one through three are denied.

---

**6.** We note that the record does not reveal whether Plaintiff characterized the acts as sexual abuse in these conversations. However-er, the mother, friend, and wife understood that Plaintiff was describing acts which constituted sexual abuse.

In his fourth point on appeal, Plaintiff argues that the statute of limitations did not begin to run until after his confrontation with Priest in 1998 because Priest's response during this confrontation constituted his last bad act. We are unable to find any authority to support this argument that the statute of limitations did not begin to run until after Priest denied hurting Plaintiff. As explained above, because Plaintiff filed his claim in 2003, more than five years after his damages were capable of ascertainment, his causes of action against Archdiocese are barred by the statute of limitations. Point denied.

In his fifth point on appeal, Plaintiff argues that his claims were not barred by the statute of limitations because Plaintiff was mentally disabled from the years 1999 until 2003 and so the statute of limitations was tolled under Section 516.170. We disagree.

■■■ To avoid the statute of limitations, a plaintiff bears the burden of showing that he strictly comes within a claimed exception. *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 19–20 (Mo. banc.1995). The statutes of limitations are favored in the law and so any exceptions must be strictly construed, even in cases of hardship. *Chambers v. Nelson,* 737 S.W.2d 225, 227 (Mo.App. E.D.1987).

■■■ We first address Plaintiff's tolling argument as it applies to all of his claims except Count I for Child Sexual Abuse, which is governed by a special statute of limitations. *See* Section 537.046. Section 516.170 tolls the statute of limitations only when the plaintiff was mentally incapacitated "at the time the cause of action accrued." As stated by the trial court, "[t]he plain import of such language is that the tolling provision will not apply at all if the person is not mentally incapacitated at the time his action accrues, even though he might later become incapacit-

ed before the limitations period has yet fully run or expired." Plaintiff admits that his cause of action accrued prior to his mental incapacitation. Because Plaintiff admittedly was not mentally incapacitated "at the time the cause of action accrued," the tolling provision of Section 516.170 does not apply.

Plaintiff relies on *Kellog v. Kellog,* 989 S.W.2d 681 (Mo.App. E.D.1999), to support his argument that Section 516.170 tolled the statute of limitations governing his cause of action. In *Kellog,* the plaintiff alleged that he was a hemophiliac and that his stepfather, the defendant, sent him outside to get firewood where he slipped on ice and fell. *Id.* at 683. During treatment for injuries he sustained from the fall, the plaintiff suffered an infection which required amputation of his leg. *Id.* at 683. The plaintiff alleged that the emotional trauma he experienced as a result of the amputation rendered him mentally incapacitated. *Id.* at 686. This court held that the plaintiff did not raise a genuine issue of material fact that the resulting emotional trauma constituted mental incapacitation under Section 516.170. *Id.* at 687. Here, Plaintiff argues that because the plaintiff in Kellog's cause of action accrued when he sustained the injury to his leg, and thus before the amputation and resulting emotional trauma, this Court contemplated that Section 516.170 applies to claims brought by mentally incapacitated individuals who become incapacitated after their claim accrued. We find this argument unpersuasive. *Kellog* did not hold that Section 516.170 tolls the statute of limitations on claims brought by mentally incapacitated individuals who become incapacitated after their claims accrued. Moreover, *Kellog* is factually inapposite. *Kellog* involved a situation where the plaintiff alleged that the main injury complained of caused the emotional trauma

that rendered him mentally incapacitated. Here, Plaintiff did not claim that the main injury complained of, the child sexual abuse, caused his motorcycle accident.

The United States Court of Appeals for the Eighth Circuit recently addressed this issue under a similar disability tolling statute. *Pecoraro v. The Diocese of Rapid City*, 435 F.3d 870 (8th Cir.2006). In *Pecoraro*, the plaintiff's cause of action for child sexual abuse against a diocese accrued in January 2001, but the plaintiff did not file his claim until November 2004, after the three year South Dakota statute of limitations had expired. *Id.* at 872–74. The plaintiff argued that the statute of limitations should be tolled under the South Dakota tolling statute because he was mentally ill from 2003 to 2004. *Id.* at 876. The South Dakota tolling statute, like Section 516.170, only tolls the statute of limitations for mental illness when the person was mentally ill "at the time the cause of action accrued." *Id.* (quoting Section 15–2–22 S.D. Codified Laws). The Eighth Circuit rejected Plaintiff's argument that his subsequent mental illness tolled the statute of limitations because he was not mentally ill when his cause of action accrued. *Id.* The Court explained that because the statute plainly states that it applies to plaintiffs who were mentally ill when their cause of action accrued, "the claim's accrual date is the relevant time for determining whether one is mentally ill"

and any subsequent mental illness is irrelevant. *Id.*

Plaintiff next contends that such an interpretation of Section 516.170 violates the Missouri Constitution by arbitrarily denying mentally incapacitated persons fair access to the courts based upon the date the plaintiff becomes incapacitated. However, the Missouri Supreme Court has previously held that Section 516.170 does not unfairly deny access to the mentally incapacitated. *Wheeler v. Briggs*, 941 S.W.2d 512, 515 (Mo. banc.1997). The court in *Wheeler* found that because the constitutional right to access the courts simply guarantees the "right to pursue in the courts the causes of action the substantive law recognizes," and because it is the practical difficulties associated with a mental disability that prevents access to the courts rather than any legal prohibition, Section 516.170 does not interfere with the constitutional right of access to the courts. *Id.* (quoting *Adams v. Children's Mercy Hospital*, 832 S.W.2d 898, 906 (Mo. banc.1992)).

Plaintiff also argues that the trial court erred in finding that the tolling exception in Section 516.170 does not apply to the statute of limitations governing Plaintiff's cause of action under Count I for child sexual abuse. Plaintiff's claim under this count is governed by Section 537.046, which establishes a separate statute of limitations for childhood sexual abuse claims.[7]

---

7. Plaintiff was *30 years old when this suit was filed*.

Section 537.046 has been revised. *See* Section 537.046 RSMo Cum.Supp.2004. The version of Section 537.046 applicable to this case states:

As used in this section, the following terms mean:

(1) "Childhood sexual abuse", any act committed by the defendant against the plaintiff which act occurred when the plaintiff was under the age of eighteen years and which act would have been a violation of section

566.030, 566.040, 566.050, 566.060, 566.070, 566.080, 566.090, 566.100, 566.110, or 566.120, RSMo, or section 568.020, RSMo;

(2) "Injury" or "illness", either a physical injury or illness or a psychological injury or illness. A psychological injury or illness need not be accompanied by physical injury or illness.

2. In any civil action for recovery of damages suffered as a result of childhood sexual abuse, the time for commencement of the action shall be *within five years of the date the plaintiff attains the age of eighteen or within*

The trial court ruled in its November 1, 2006 order that this claim was time barred as the disability tolling provision of Section 516.170 did not apply to causes of action falling outside that chapter, including the childhood sexual abuse statute found in Section 537.046.

Section 516.170 specifically states that it only applies to toll the statute of limitations specified in sections 516.100 through 516.370. Section 516.300 further clarifies that 516.170 does not apply to statutes of limitations found outside of that chapter as it states that "the provisions of sections 516.010 to 516.370 shall not extend to any action which is or shall be otherwise limited by any statute; but such action shall be brought within the time limited by such statute." Therefore, the provisions of Section 516.170 do not apply to Plaintiff's Count I for child sexual abuse because that cause of action is governed by Section 537.046, a special statute of limitations that is not specified in sections 516.100 through 516.370. Point denied.

In his sixth point on appeal, Plaintiff argues that the trial court erred in granting summary judgment on Plaintiff's claim that Archdiocese engaged in fraud that prevented Plaintiff from discovering his cause of action. We disagree.

█ "There can be no fraudulent concealment that will prevent the running of the statute of limitations where the plaintiff knows of the cause of action or there is a presumption of such knowledge." *Doe v. O'Connell,* 146 S.W.3d 1, 4 (Mo.App. E.D. 2004) (quoting *Hasenyager v. Bd. Of Police Comm'rs. of Kansas City,* 606 S.W.2d 468, 471 (Mo.App. W.D.1980)). Because

*three years of the date the plaintiff discovers or reasonably should have discovered that the injury or illness was caused by child sexual abuse, whichever later occurs.*

3. This section shall apply to any action commenced on or after August 28, 1990, in-

Plaintiff admits that he always remembered the events constituting abuse, there could be no fraudulent concealment. As stated by the trial court "because the facts in the summary judgment record leave no doubt that Plaintiff was aware of and always remembered the acts of abuse by Father McGrath, it is clear as a matter of law that such alleged 'fraud' cannot apply to toll or extend the five year limitations period." Point denied.

## II. Conclusion

The judgment of the trial court is affirmed.

CLIFFORD H. AHRENS, J.

GLENN A. NORTON, J., Concur.

cluding any action which would have been barred by the application of the statute of limitation applicable prior to that date. *Id.* (emphasis added).