KURT S. ODENWALD, Judge
Introduction
Plaintiffs appeal from the circuit court's judgment dismissing their petition against Thompson Coburn LLP ("Thompson Coburn"). Plaintiffs raise six points on appeal. In their first point, Plaintiffs contend that the circuit court erroneously dismissed *912 their petition because the five-year statute of limitations contained in Section 516.120[1] did not bar their claims. Finding the first point dispositive, we hold that Section 516.120 bars Plaintiffs' claims because they filed suit more than five years after their damages became capable of ascertainment. Accordingly, the circuit court did not err by dismissing Plaintiffs' petition. We affirm.
Factual and Procedural History
Seventy-eight individuals (collectively "Plaintiffs") were victims of a fraudulent investment scheme managed by a St. Louis attorney, Martin Sigillito ("Sigillito"). Sigillito perpetrated the investment scheme by recruiting clients to invest assets-often self-directed Individual Retirement Accounts ("IRAs")-in an overseas lending system called the British Lending Program ("BLP"). Sigillito would then order the transfer of his clients' assets from a custodian company to Scott Brown ("Brown"), a Kansas City attorney, who purportedly invested the assets with foreign borrowers.[2] Allegiant Bank served as custodian of the clients' self-directed IRAs from 2000 until early 2002,[3] when it transferred custody to a successor custodian.
In 2010, the BLP collapsed and Plaintiffs lost their investments. An FBI investigation revealed that Sigillito operated the BLP as a Ponzi scheme. Unsealing the indictment in May 2011, the United States charged Sigillito with money laundering, wire fraud, and mail fraud. The federal indictment asserted that, inter alia , Sigillito and Brown retained unauthorized placement fees after transferring their clients' assets. A jury found Sigillito guilty, and the federal district court sentenced him to forty years in prison. Sigillito's convictions and sentences were affirmed. United States v. Sigillito, 759 F.3d 913, 941 (8th Cir. 2014).
On October 31, 2016, Plaintiffs filed suit, and after amendment, alleged the following causes of action against Thompson Coburn and John and Jane Does 1-10: (1) aiding and abetting Sigillito's breach of fiduciary duty; (2) conspiring with Sigillito, Brown, and Allegiant Bank to breach Sigillito's fiduciary duty to Plaintiffs; (3) conspiring with Sigillito, Brown, and Allegiant Bank to perform and conceal unlawful acts; and (4) aiding and abetting Allegiant Bank's violations of Missouri's Uniform Fiduciaries Law.[4]
In their petition, Plaintiffs averred that Thompson Coburn guided its client, Allegiant Bank, in concealing the improper conduct committed as part of the BLP scheme. Specifically, Plaintiffs claimed that Thompson Coburn and Allegiant Bank discovered in late 2001 that Sigillito and Brown retained unauthorized placement fees when transferring the clients' assets to overseas borrowers and made transactions prohibited by the Internal Revenue Service. Plaintiffs contend that, instead of informing Allegiant Bank's clients of the unauthorized transactions or reporting the prohibited self-dealing to the Internal Revenue Service, Thompson Coburn aided Allegiant Bank in transferring its custody of the self-directed IRAs to a successor custodian *913 in a manner that permitted the BLP's continuation. Plaintiffs maintain that, because of the advice and counsel given by Thompson Coburn, Allegiant Bank secured customer approval for transfer of the IRA accounts to the successor custodian without raising questions about Allegiant Bank's resignation.
Plaintiffs claim that they first discovered Thompson Coburn's purported wrongful conduct in 2015. At that time, Plaintiffs subpoenaed and obtained Thompson Coburn's billing records in connection with an unrelated lawsuit. Plaintiffs submit that these records prove Thompson Coburn provided legal services to Allegiant Bank regarding Sigillito's operation of the BLP. Plaintiffs argue that they could not identify Thompson Coburn's purported wrongful conduct prior to obtaining these records in 2015.
Thompson Coburn moved to dismiss Plaintiffs' petition pursuant to Rule 55.27,[5] arguing that; (1) Plaintiffs' claims were barred by Section 516.120; (2) Thompson Coburn owed no duty to Plaintiffs; (3) Plaintiffs' claims for aiding and abetting failed as a matter of law because Missouri does not recognize aiding and abetting as a cause of action; (4) Plaintiffs' claims for conspiracy failed as a matter of law because they were proceeding against a single conspirator, the factual allegations refuted the existence of a conspiracy, and they did not allege facts supporting any underlying tort; and (5) Plaintiffs' failed to plead the circumstances of fraud with the particularity required by Rule 55.15.
The circuit court granted Thompson Coburn's motion to dismiss on the grounds stated therein and dismissed Plaintiffs' petition with prejudice. This appeal follows.[6]
Standard of Review
We review de novo the circuit court's grant of a defendant's motion to dismiss. Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors, 476 S.W.3d 913, 915 (Mo. banc 2016). A motion to dismiss solely tests the adequacy of the plaintiff's petition and examines if the petition sets forth facts entitling him or her to relief. Id.; Edwards v. City of Ellisville, 426 S.W.3d 644, 652 (Mo. App. E.D. 2013). The reviewing court assumes that "all of the plaintiff's allegations are true and liberally grants to the plaintiff all reasonable inferences from the alleged facts." Nickell v. Shanahan, 439 S.W.3d 223, 226-27 (Mo. banc 2014).
When the circuit court does not identify a specific basis for dismissing a petition, we will affirm a judgment of dismissal if we can sustain it on any of the grounds supported by the motion to dismiss. Byrne & Jones Enters. v. Monroe City R-1 Sch. Dist., 493 S.W.3d 847, 851 (Mo. banc 2016) ; Avery Contracting, LLC v. Niehaus, 492 S.W.3d 159, 162 (Mo. banc 2016). If it clearly appears from the plaintiff's petition that a statute of limitations bars his or her cause of action, a motion to dismiss on that ground is properly sustained. Klemme v. Best, 941 S.W.2d 493, 497 (Mo. banc 1997).
Points on Appeal
Plaintiffs' raise six points on appeal, each charging the circuit court with error for dismissing their petition on separate grounds. In Point One, Plaintiffs argue that their claims were not barred by Section 516.120 because they filed suit within five years after their damages became capable *914 of ascertainment. In Point Two, Plaintiffs contend that, due to the nature of their claims, they were not required to plead any duty owed, Points Three and Four assert that Plaintiffs pleaded facts and circumstances delineating fraud and mistake with sufficient particularity, and that Thompson Coburn did not raise this objection in its motion to dismiss. Point Five posits that Plaintiffs' pleadings sufficiently establish claims for aiding and abetting under Missouri law. Lastly, in Point Six, Plaintiffs maintain that their petition states a claim for conspiracy because they pleaded facts sufficiently establishing the underlying tort that was the basis of the conspiracy and they were not required to join the other conspirators in this petition to proceed against Thompson Coburn.
Discussion
Point One-the application of the statute of limitations-is dispositive of this appeal. Plaintiffs reason that the damages caused by Thompson Coburn's wrongful conduct first became capable of ascertainment in 2015, when they received the Thompson Coburn's billing statements regarding the legal services it provided to Allegiant Bank about the BLP. In contrast, Thompson Coburn posits that Plaintiffs' damages became capable of ascertainment no later than May 2011, after the BLP investment scheme collapsed, Plaintiffs lost their investments, and Sigillito's indictment was unsealed.
The parties agree that the five-year statute of limitations found in Section 516.120 applies to the claims raised here. Powel v. Chaminade Coll. Preparatory, Inc., 197 S.W.3d 576, 580 (Mo. banc 2006) ; Chouteau Auto Mart, Inc. v. First Bank of Mo., 148 S.W.3d 17, 24 (Mo. App. W.D. 2004). Accordingly, Plaintiffs claims are actionable only if they filed their lawsuit within five years from the date their causes of action accrued. Ashford Condo., Inc. v. Horner & Shifrin, Inc., 328 S.W.3d 714, 717-18 (Mo. App. E.D. 2010). The only question before us, then, is when did Plaintiffs' causes of action accrue?
Section 516.100 governs the application of Section 516.120. State ex rel. Marianist Province of U.S. v. Ross, 258 S.W.3d 809, 810 (Mo. banc 2008). Section 516.100 explains:
[T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment , and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.
(emphasis added). Our Supreme Court has determined that damages are capable of ascertainment-and therefore the statute of limitation begins to run-when the evidence places "a reasonably prudent person on notice of a potentially actionable injury," Powel, 197 S.W.3d at 582 (quoting Bus. Men's Assurance Co. of Am. v. Graham, 984 S.W.2d 501, 507 (Mo. banc 1999) ). Under the capable-of-ascertainment analysis, the determinative factor is whether "a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages," Id. at 584 ; see also Marianist Province, 258 S.W.3d at 811.
Plaintiffs posit that their damages were not capable of ascertainment until 2015, when they identified that Thompson Coburn's wrongful conduct contributed to their investment losses. Plaintiffs assert that, prior to their 2015 discovery of Thompson Coburn's billing records, they did not have "sufficient knowledge of the acts constituting the wrong to place a reasonable person on notice of a potentially actionable injury."
*915 Behan v. Firemen's Ret. Sys. of St. Louis, 452 S.W.3d 218, 225 (Mo. App. E.D. 2014) (emphasis added).
Plaintiffs ask this Court to apply the capable-of-ascertainment test in a manner specifically rejected by our Supreme Court and disregard the information available to them as early as May 2011. See Powel, 197 S.W.3d at 581-82. In Powel, the Supreme Court explicitly denied the plaintiff's request to interpret the capable-of-ascertainment test to require subjective awareness "that he suffered damages and that they were caused by 'the actions of the individuals' in question and were connected to his ... injuries. ' " Id. at 581 (emphasis added). The Supreme Court thus refused to construe the capable-of-ascertainment test in a manner that would trigger the statute of limitations only when the particular plaintiff discovers his or her damages, and their causes, in the normal course of events while exercising reasonable diligence. See id.; Jepson v. Stubbs, 555 S.W.2d 307, 313 (Mo. banc 1977). Instead, the pertinent question in applying the capable-of-ascertainment test remains whether "a reasonable person would have been put on notice that an injury and substantial damages may have occurred[.]" Farrow v. St. Francis Med. Ctr., 407 S.W.3d 579, 599 (Mo. banc 2013) (quoting Powel, 197 S.W.3d at 584 ).
Critically, the capable-of-ascertainment test is an objective one, and damages are ascertainable "when the fact of damage can be discovered or made known, not when the plaintiff actually discovers injury or wrongful conduct. " Farrow, 407 S.W.3d at 599 (emphasis added) (quoting Klemme v. Best, 941 S.W.2d 493, 497 (Mo. banc 1997) ). Stated differently, the plaintiff's knowledge or subjective discovery of the injury and the cause of that injury are not required to trigger the statute of limitations under Section 516.100. Graham v. McGrath, 243 S.W.3d 459, 462 (Mo. App. E.D. 2007). The plaintiff's unreasonable failure to recognize the harmful nature of the purported tortfeasor's wrongful conduct will not prevent the accrual of his or her cause of action. See id. at 463.
Applying the capable-of-ascertaimnent test objectively, the facts alleged by Plaintiffs demonstrate that their damages were capable of ascertainment by May 2011, The parties agree that the BLP collapsed after an FBI investigation in 2010 and that Plaintiffs received notice of their extensive investment losses shortly thereafter. The parties acknowledge that Sigillito's federal indictment was unsealed in May 2011. Sigillito's indictment revealed the charges of money laundering, wire fraud, and mail fraud arising from BLP operations. The federal indictment exposed the wrongful nature of the BLP venture, linking Plaintiffs' investment losses to, and unveiling the damage caused by, the BLP's administration. The federal indictment also established that Sigillito, in managing the BLP, retained numerous unauthorized placement fees before directing the distribution of his clients' assets to overseas borrowers and committed improper self-dealing in these transfers.
After Sigillito's indictment was unsealed, Plaintiffs had notice of Sigillito's repeated breaches of his fiduciary duty to his clients and his corresponding efforts to conceal the improper management of the BLP. Plaintiffs were alerted to the need to investigate any suspicious, past transactions with the BLP. Plaintiffs knew that Allegiant Bank abruptly transferred its custodianship of the self-directed IRAs and that it did not report Sigillito's misconduct to his clients or to the Internal Revenue Service. Plaintiffs also knew that multiple parties contributed to preserving and continuing the BLP scheme.
As early as May 2011, Plaintiffs ascertained their significant investment losses, the unauthorized and improper transactions made by Sigillito and Brown under *916 the auspices of managing the BLP, the efforts used to conceal the improper transactions, and the involvement of several parties in maintaining the BLP scheme. The events listed above would have put a reasonable party on notice that an injury and substantial damages may have occurred from the BLP scheme, and correspondingly begin the time period running for said party to ascertain the extent of his or her damages. See Graham, 243 S.W.3d at 463.
While the cause and extent of their damages were capable of ascertainment by at least May 2011, we recognize that Plaintiffs may not have identified all the purported conspirators or abettors at that time, or discerned the precise role played by each party in the propagation of the BLP, However, Plaintiffs' inability to identify accurately Thompson Coburn as an alleged conspirator or abettor does not excuse the untimely filing of their petition or delay the accrual of their causes of action. See Cook v. De Soto Fuels, Inc., 169 S.W.3d 94, 103-04 (Mo. App. E.D. 2005) (barring the plaintiffs' claim as untimely under Section 516.120 and finding that the cause of action accrued even though the plaintiffs had not identified the defendant as the actual cause of the damaging misconduct). Indeed, Missouri courts have rejected the argument that a cause of action cannot accrue until the plaintiff can reasonably ascertain the identity of the defendants. Id.; see, e.g., K.G. v. R.T.R., 918 S.W.2d 795, 798 (Mo. banc 1996) (determining that it is the ability to ascertain the consequential injury and damages, not the identity of the perpetrator, that triggers the running of the statute of limitations); Frazee v. Partney, 314 S.W.2d 915, 920-21 (Mo. 1958) (specifically rejecting the plaintiffs' claim that their wrongful-death causes of action did not accrue until they could maintain an effective suit against the defendant, which required the ability to identify him and connect him to the cause of decedent's death).
Missouri jurisprudence clearly mandates that the statute of limitations commences to run when the plaintiff has notice of actionable injury resulting from wrongful conduct, notwithstanding the plaintiff's inability to identify the particular defendant and connect him or her to the damaging misconduct. See K.G., 918 S.W.2d at 798 ; Cook, 169 S.W.3d at 104. Given this clear directive, we hold that Plaintiffs' inability to connect the purported wrongful conduct to Thompson Coburn prior to the expiration of the statute of limitations did not delay the accrual of their causes of action under Section 516.120. See Cook, 169 S.W.3d at 104 ; cf. K.G., 918 S.W.2d at 798.
The touchstone of a cause of action's accrual-and thus the triggering of the statute of limitations-remains the existence of evidence that places a reasonable person "on notice that an injury and substantial damages may have occurred" and causes them "to ascertain the extent of their damages." Powel, 197 S.W.3d at 584. Plaintiffs' consequential injuries and damages were identifiable by May 2011 after the collapse and exposure of the BLP, the loss of their investments, and the unsealing of Sigillito's indictment. A reasonable plaintiff would have received notice from these events that he or she experienced an injury and substantial damages, and he or she would have investigated further by unmasking the operations of the BLP and those associated with it.
Because Plaintiffs' damages were capable of ascertainment no later than May 2011, Section 516.120 required Plaintiffs to file their petition within five years of that date.[7] Plaintiffs' petition therefore was due *917 on or before May 2016. Because Plaintiffs untimely filed suit on October 31, 2016, Section 516.120 bars Plaintiffs' claims.
The circuit court did not err in dismissing Plaintiffs' petition on the basis of Thompson Coburn's statute-of-limitations defense. Point One is denied. Because the circuit court properly dismissed Plaintiffs' petition, we need not address Plaintiffs' remaining points on appeal.
Conclusion
The judgment of the circuit court is affirmed.
Robert G. Dowd, Jr., P J., concurs.
Sherri B. Sullivan, J., concurs.

All statutory references are to RSMo (2016).

Plaintiffs do not allege that Sigillito and Brown were affiliated with Thompson Coburn in any manner.

Twelve of the Plaintiffs maintained self-directed IRAs at Allegiant Bank and invested in the BLP between 2000 and 2001.

In their petition, Plaintiffs did not allege any claims of fraud, aiding and abetting fraud, or conspiracy to defraud against Thompson Coburn and John and Jane Does 1-10.

All rule references are to Mo. R. Civ. P. (2016).

The circuit court's judgment only adjudicated the claims against Thompson Coburn. Subsequently, Plaintiffs voluntarily dismissed their claims against John and Jane Does 1-10 and filed another notice of appeal. We consolidated the appeals.

Plaintiffs do not assert that any statutory provision tolled their claims during the applicable time, nor do they invoke any statutory exceptions to the application of Sections 516.100 and 516.120. Plaintiffs' sole argument is that their causes of action accrued in 2015.